1   Robert Drexler (SBN 119119)
    Robert.Drexler@CapstoneLawyers.com
2   Molly DeSario (SBN 230763)
    Molly.DeSario@CapstoneLawyers.com
3   Jonathan Lee (SBN 267146)
    Jonathan.Lee@CapstoneLawyers.com
4   Helga Hakimi (SBN 257381)
    Helga.Hakimi@CapstoneLawyers.com
5   Capstone Law APC
    1875 Century Park East, Suite 1000
6   Los Angeles, California 90067
    Telephone:     (310) 556-4811
7   Facsimile:     (310) 943-0396

8   Attorneys for Plaintiffs Gerardo Torres
    and Tawni Vandagriff
9

10

11                  UNITED STATES DISTRICT COURT

12            FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14  GERARDO TORRES and TAWNI              Case No.:  1:20-cv-01697-NONE-BAM
    VANDAGRIFF, individually, and on behalf
15  of other members of the general public  **FIRST AMENDED CLASS ACTION**
    similarly situated,                    **COMPLAINT & ENFORCEMENT**
16                                          **ACTION UNDER THE PRIVATE**
                                            **ATTORNEYS GENERAL ACT,**
17                  Plaintiffs,             **CALIFORNIA LABOR CODE §§ 2698,** *ET*
                                            *SEQ.*
18            vs.

19  REXEL USA, INC., a Delaware            (1) Violation of California Labor Code §§ 510
    corporation; and DOES 1 through 10,        and 1198 (Unpaid Overtime);
20  inclusive,                             (2) Violation of California Labor Code
                                               §§ 1182.12, 1194, 1197, 1197.1, and 1198
21                                             (Unpaid Minimum Wages);
                                           (3) Violation of California Labor Code
22                  Defendants.                §§ 226.7, 512(a), 516, and 1198 (Failure to
                                               Provide Meal Periods);
23                                         (4) Violation of California Labor Code
                                               §§ 226.7, 516, and 1198 (Failure to
24                                             Authorize and Permit Rest Periods);
                                           (5) Violation of California Labor Code
25                                             §§ 226(a), 1174(d), and 1198 (Non-
                                               Compliant Wage Statements and Failure to
26                                             Maintain Payroll Records);
                                           (6) Violation of California Labor Code §§ 201
27                                             and 202 (Wages Not Timely Paid Upon
                                               Termination);
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(7) Violation of California Labor Code § 204
(Failure to Timely Pay Wages During
Employment);
(8) Violation of California Labor Code § 2802
(Unreimbursed Business Expenses);
(9) Civil Penalties for Violations of California
Labor Code, Pursuant to PAGA, §§ 2698,
*et seq.*;
(10)    Violation of California Business &
Professions Code §§ 17200, *et seq.*
(Unlawful Business Practices); and
(11)    Violation of California Business &
Professions Code §§ 17200, *et seq.* (Unfair
Business Practices)

**Jury Trial Demanded**

1        Plaintiffs Gerardo Torres and Tawni Vandagriff, individually and on behalf of all other

2    members of the public similarly situated and as aggrieved employees and on behalf of all

3    other aggrieved employees, allege as follows:

4                             **JURISDICTION AND VENUE**

5        1.     This class action is brought pursuant to Rule 23 of the Federal Rules of Civil

6    Procedure to recover wages and all other available relief on behalf of Plaintiffs and all

7    similarly situated current and former non-exempt, hourly paid employees of Defendants, and a

8    non-class representative enforcement action brought pursuant to the Labor Code Private

9    Attorneys General Act of 2004, California Labor Code sections 2698, *et seq.* ("PAGA") to

10   recover civil penalties and any other available relief on behalf of Plaintiffs, the State of

11   California, and other current and former employees who worked for Defendants in California

12   as non-exempt, hourly paid employees and received at least one wage statement and against

13   whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor

14   Code or any provision regulating hours and days of work in the applicable Industrial Welfare

15   Commission ("IWC") Wage Order were committed, as set forth in this complaint.

16       2.     This Court has original jurisdiction over this action pursuant to 28 U.S.C.

17   § 1332(d) and based on 28 U.S.C. §§ 1441, 1446.

18       3.     Venue is proper in this Court because this case was originally filed in the

19   Superior Court of California for the County of Stanislaus.  Venue properly lies in the United

20   States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(a),

21   1391(b), and 1441(a).

22       4.     The PAGA statute authorizes aggrieved employees to sue directly as the proxy

23   of the State of California for civil penalties for violations of various provisions in the

24   California Labor Code.

25                              **THE PARTIES**

26       5.     Plaintiff Gerardo Torres is a resident of Newman, in Stanislaus County,

27   California.  Defendants employed Plaintiff Torres as an hourly paid, non-exempt Warehouse

28   Driver, Counter Sales Representative, and Inside Sales Representative from approximately

1  June 2011 to July 2020.  Plaintiff Torres worked for Defendants out of their store location in

2  Modesto, California.  During his employment, Plaintiff Torres typically worked eight (8)

3  hours or more per day, five (5) days per week, from 6:00 a.m. to 3:30 p.m.  Plaintiff Torres's

4  primary job duties included, without limitation, conducting inventory, creating reports,

5  assisting customers, making sales calls, managing client accounts, transferring supplies from

6  other store locations, and making deliveries, as needed.

7      6.     Plaintiff Tawni Vandagriff is a resident of Oakdale, in Stanislaus County,

8  California.  Defendants employed Plaintiff Vandagriff as an hourly paid, non-exempt

9  Warehouse Associate from approximately July 2017 to July 2018 at Defendants' warehouse in

10  Patterson, California, and as a Driver from approximately July 2018 to August 2020 at

11  Defendants' store location in Modesto, California.  During her employment, Plaintiff

12  Vandagriff typically worked eight (8) to ten (10) hours or more per day, five (5) days per

13  week.  Plaintiff Vandagriff's typical work shift began at 6:00 a.m.  Plaintiff Vandagriff's

14  primary job duties as a Warehouse Associate included, without limitation, assisting customers

15  with product pick-ups, locating products for shipments, wrapping shipment pallets, and

16  arranging for pallet deliveries.  Plaintiff Vandagriff's primary job duties as a Driver included,

17  without limitation, delivering products to job sites, providing customer assistance, and

18  documenting and logging deliveries.

19      7.     Defendant REXEL USA, INC. was and is, upon information and belief, a

20  Delaware corporation, and at all times hereinafter mentioned, an employer whose employees

21  are engaged throughout this county, the State of California, or the various states of the United

22  States of America.

23      8.     Plaintiffs are unaware of the true names or capacities of the Defendants sued

24  herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to

25  amend the complaint and serve such fictitiously named Defendants once their names and

26  capacities become known.

27      9.     Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10

28  were the partners, agents, owners, or managers of REXEL USA, INC. at all relevant times.

1       10.    Plaintiffs are informed and believe, and thereon allege, that each and all of the

2   acts and omissions alleged herein was performed by, or is attributable to, REXEL USA, INC.

3   and/or DOES 1 through 10 (collectively, "Defendants" or "REXEL"), each acting as the

4   agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the

5   other co-Defendants and was acting within the course and scope of such agency, employment,

6   joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts

7   of any and all Defendants were in accordance with, and represent, the official policy of

8   Defendants.

9       11.    At all relevant times, Defendants, and each of them, ratified each and every act

10   or omission complained of herein.  At all relevant times, Defendants, and each of them, aided

11   and abetted the acts and omissions of each and all the other Defendants in proximately causing

12   the damages herein alleged.

13       12.    Plaintiffs are informed and believe, and thereon allege, that each of said

14   Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts,

15   omissions, occurrences, and transactions alleged herein.

16                **GENERAL ALLEGATIONS**

17       13.    Defendants are a global electrical supply and services company, serving

18   industrial, residential, and commercial markets.  Upon information and belief, Defendants

19   maintain a single, centralized Human Resources ("HR") department at their company

20   headquarters in Dallas, Texas, which is responsible for recruiting and hiring of new

21   employees, and communicating and implementing Defendants' company-wide policies,

22   including timekeeping policies and meal and rest period policies, to employees throughout

23   California.

24       14.    In particular, Plaintiffs and class members, on information and belief, received

25   the same standardized documents and/or written policies.  Upon information and belief, the

26   usage of standardized documents and/or written policies, including new-hire documents,

27   indicate that Defendants dictated policies at the corporate level and implemented them

28   company-wide, regardless of their employees' assigned locations or positions.  Upon

FIRST AMENDED CLASS ACTION COMPLAINT

1  information and belief, Defendants set forth uniform policies and procedures in several

2  documents provided at an employee's time of hire.

3       15.    Upon information and belief, Defendants maintain a centralized Payroll

4  department at their company headquarters in Dallas, Texas, which processes payroll for all

5  non-exempt, hourly paid employees working for Defendants at their various locations and

6  jobsites in California, including Plaintiffs and class members.  Based upon information and

7  belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid

8  employees in California, irrespective of their work locations.  Upon information and belief,

9  Defendants process payroll for departing employees in the same manner throughout the State

10  of California, regardless of the manner in which each employee's employment ends.

11       16.    Defendants continue to employ non-exempt or hourly paid employees in

12  California.

13       17.    Plaintiffs are informed and believe, and thereon allege, that at all times herein

14  mentioned, Defendants were advised by skilled lawyers and other professionals, employees

15  and advisors knowledgeable about California labor and wage law, employment and personnel

16  practices, and about the requirements of California law.

17       18.    Plaintiffs are informed and believe, and thereon allege, that Plaintiffs and class

18  members were not paid for all hours worked because all hours worked were not recorded.

19       19.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or

20  should have known that Plaintiffs and class members were entitled to receive certain wages

21  for overtime compensation and that they were not receiving certain wages for overtime

22  compensation.

23       20.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or

24  should have known that Plaintiffs and class members were entitled to be paid at a regular rate

25  of pay, and corresponding overtime rate of pay, that included as eligible income all income

26  derived from incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay,

27  and/or other forms of compensation.

28       21.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or

FIRST AMENDED CLASS ACTION COMPLAINT

1  should have known that Plaintiffs and class members were entitled to receive at least

2  minimum wages for compensation and that they were not receiving at least minimum wages

3  for work that was required to be done off-the-clock.  In violation of the California Labor

4  Code, Plaintiffs and class members were not paid at least minimum wages for work done off-

5  the-clock.

6      22.    Plaintiffs are informed and believe, and thereon allege,  that Defendants knew

7  or should have known that Plaintiffs and class members were entitled to meal periods in

8  accordance with the Labor Code or payment of one (1) additional hour of pay at their regular

9  rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal

10 periods and that Plaintiffs and class members were not provided with all meal periods or

11 payment of one (1) additional hour of pay at their regular rates of pay when they did not

12 receive a timely, uninterrupted, thirty (30) minute meal period.

13     23.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or

14 should have known that Plaintiffs and class members were entitled to rest periods in

15 accordance with the Labor Code and applicable IWC Wage Order or payment of one (1)

16 additional hour of pay at their regular rates of pay when they were not authorized and

17 permitted to take a compliant rest period.  In violation of the California Labor Code, Plaintiffs

18 and class members were not authorized and permitted to take compliant rest periods, nor did

19 Defendants provide Plaintiffs and class members with payment of one (1) additional hour of

20 pay at their regular rates of pay when they were not authorized and permitted to take a

21 compliant rest period.

22     24.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or

23 should have known that Plaintiffs and class members were entitled to receive complete and

24 accurate wage statements in accordance with California law.  In violation of the California

25 Labor Code, Plaintiffs and class members were not provided complete and accurate wage

26 statements.

27     25.    Plaintiffs are informed and believe, and thereon allege, that Defendants knew or

28 should have known that they had a duty to maintain accurate and complete payroll records in

accordance with the Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

26.     Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiffs and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, within permissible time periods.

27.     Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiffs and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, within permissible time periods.

28.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, that Defendants knew or should have known that they had a duty to cover the costs and expenses Plaintiffs and class members incurred obtaining mandatory physical examinations and/or drug tests, but willfully, knowingly, and intentionally failed to do so.

29.     Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive sick leave benefits to be paid at a regular rate of pay, that included, as eligible income, all income derived from incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of compensation.

30.     Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and/or class members were entitled to suitable seating and/or have seats nearby to use during a lull in tasks that do require moving about or standing.

31.     Plaintiffs are informed and believe, and thereon allege, that Defendants knew or should have known that Plaintiffs and class members were entitled to receive full

1  reimbursement for all business-related expenses and costs they incurred during the course and

2  scope of their employment and that they did not receive full reimbursement of applicable

3  business-related expenses and costs incurred.

4      32.    Plaintiffs are informed and believe, and thereon allege, that at all times herein

5  mentioned, Defendants knew or should have known that it had a duty to provide Plaintiffs

6  and/or class members with safety devices and safeguards, such as personal protective

7  equipment, to protect their life, safety, and health in the workplace, but willfully, knowingly,

8  and intentionally failed to do so.

9      33.    Plaintiffs are informed and believe, and thereon allege, that at all times herein

10  mentioned, Defendants knew or should have known that they had a duty to compensate

11  Plaintiffs and class members for all hours worked, and that Defendants had the financial

12  ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so,

13  and falsely represented to Plaintiffs and class members that they were properly denied wages,

14  all in order to increase Defendants' profits.

15  **PAGA REPRESENTATIVE ALLEGATIONS**

16      34.    At all times herein set forth, PAGA provides that any provision of law under

17  the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be

18  assessed and collected by the LWDA for violations of the California Labor Code and

19  applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a

20  civil action brought on behalf of themselves and other current or former employees pursuant

21  to procedures outlined in California Labor Code section 2699.3.

22      35.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any

23  person who was employed by the alleged violator and against whom one or more of the

24  alleged violations was committed."

25      36.    Plaintiffs and other current and former employees of Defendants are "aggrieved

26  employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current

27  or former employees and one or more of the alleged violations were committed against them.

28      37.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved

employee, including Plaintiffs, may pursue a civil action arising under PAGA after the following requirements have been met:

    (a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

    (b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

    (c)    The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation ("LWDA's Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

38.    Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiffs, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

    (a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

    (b)    An aggrieved employee's notice filed with the LWDA pursuant to

FIRST AMENDED CLASS ACTION COMPLAINT

2699.3(c) and any employer response to that notice shall be
accompanied by a filing fee of seventy-five dollars ($75).

(c)    The employer may cure the alleged violation within thirty-three (33)
calendar days of the postmark date of the notice sent by the aggrieved
employee or representative.  The employer shall give written notice
within that period of time by certified mail to the aggrieved employee or
representative and by online filing with the LWDA if the alleged
violation is cured, including a description of actions taken, and no civil
action pursuant to Section 2699 may commence.  If the alleged violation
is not cured within the 33-day period, the aggrieved employee may
commence a civil action pursuant to Section 2699.

39.    On November 5, 2020, Plaintiff Torres provided written notice by online filing
to the LWDA and by Certified Mail to Defendants of the specific provisions of the California
Labor Code alleged to have been violated, including facts and theories to support the alleged
violations, in accordance with California Labor Code section 2699.3.  Plaintiff Torres's
written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).
The LWDA PAGA Administrator confirmed receipt of Plaintiff Torres's written notice and
assigned Plaintiff Torres PAGA Case Number LWDA-CM-811757-20.  On January 15, 2021,
Plaintiff Torres sent an amended written notice by online filing to the LWDA and by certified
mail to Defendants of the specific provisions of the California Labor Code alleged to have
been violated, supplementing and clarifying the facts and theories to support the alleged
violations set forth in his original LWDA notice, in accordance with California Labor Code
section 2699.3.  True and correct copies of Plaintiff Torres's written notices to the LWDA and
Defendants dated November 5, 2020, and January 15, 2021, are attached hereto as "Exhibit
1."

40.    On November 5, 2020, Plaintiff Vandagriff provided written notice by online
filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the
California Labor Code alleged to have been violated, including facts and theories to support

the alleged violations, in accordance with California Labor Code section 2699.3. Plaintiff Vandagriff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75). The LWDA PAGA Administrator confirmed receipt of Plaintiff Vandagriff's written notice and assigned Plaintiff Vandagriff PAGA Case Number LWDA-CM-811760-20. On January 15, 2021, Plaintiff Vandagriff sent an amended written notice by online filing to the LWDA and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, supplementing and clarifying the facts and theories to support the alleged violations set forth in her original LWDA notice, in accordance with California Labor Code section 2699.3. True and correct copies of Plaintiff Vandagriff's written notices to the LWDA and Defendants dated November 5, 2020, and January 15, 2021, are attached hereto as "Exhibit 2."

41.    As of the filing date of this complaint, over 65 days have passed since Plaintiffs sent the notices described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiffs' claims and Defendants have not cured the violations.

42.    Thus, Plaintiffs have satisfied the administrative prerequisites under California Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

43.    Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ." Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

44.    Defendants, at all times relevant to this complaint, were employers or persons

who violated Plaintiffs' and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

45.    As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

46.    Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), and 2699.5, and section 558, Plaintiffs, acting in the public interest as private attorneys general, seek assessment and collection of civil penalties for themselves, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

## CLASS ACTION ALLEGATIONS

47.    Plaintiffs bring this action on their own behalf, as well as on behalf of each and all other persons similarly situated, and thus seek class certification under Rule 23 of the Federal Rules of Civil Procedure.

48.    All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

49.    Plaintiffs' proposed class consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California at Defendants' retail, warehouse, and/or distribution center locations, within four years prior to the filing of the initial complaint until the date of trial ("Class").

50.    Plaintiffs' proposed subclass consists of and is defined as follows:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California at Defendants' retail, warehouse, and/or distribution center locations, and who received at least one
> wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass").

51.    Members of the Class and Subclass are referred to herein as "class members."

52.    Plaintiffs reserve the right to redefine the Class and Subclass and to add

1   additional subclasses as appropriate based on further investigation, discovery, and specific

2   theories of liability.

3       53.     This action is brought and properly may be maintained as a class action

4   pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1),

5   (b)(2), or (b)(3) and satisfies the requirements thereof.

6       54.     According to Defendants' removal papers, there are at least 1,020 non-exempt,

7   hourly paid employees working for Defendants across California during the relevant period.

8   Thus, it is reasonable to presume that the members of the class are so numerous that joinder of

9   all members is impracticable.  The disposition of their claims in a class action will provide

10  substantial benefits to the parties and the Court.

11      55.     Plaintiffs' claims are typical of those of the class members, because Plaintiffs

12  suffered the violations set forth in this First Amended Complaint.

13      56.     Plaintiffs will adequately protect the interests of class members.  Plaintiffs have

14  no interests that are adverse to or conflict with class members and are committed to the

15  vigorous prosecution of this action.  To that end, Plaintiffs have retained counsel who is

16  competent and experienced in handling class actions on behalf of employees.

17      57.     A class action is superior to all other available methods for the fair and efficient

18  adjudication of this controversy since joinder of all members is impracticable.  Furthermore,

19  as the amount suffered by individual class members may be relatively small, the expense and

20  burden of individual litigation make it impossible for members of the Class to individually

21  redress the wrongs done to them.  There will be no difficulty in the management of this case

22  as a class action.

23      58.     There are common questions of law and fact as to class members that

24  predominate over questions affecting only individual members, including, but not limited to:

25              (a)     Whether Defendants required Plaintiffs and class members to work over

26                      eight (8) hours per day, over twelve (12) hours per day, or over forty

27                      (40) hours per week and failed to pay all legally required overtime

28                      compensation to Plaintiffs and class members;

(b)  Whether Defendants failed to properly calculate the "regular rate" of pay on which Plaintiffs' and class members' overtime rate of pay was based;

(c)  Whether Defendants failed to pay Plaintiffs and class members at least minimum wages for all hours worked;

(d)  Whether Defendants failed to provide Plaintiffs and class members with meal periods;

(e)  Whether Defendants failed to authorize and permit Plaintiffs and class members to take rest periods;

(f)  Whether Defendants provided Plaintiffs and class members with complete and accurate wage statements as required by California Labor Code section 226(a);

(g)  Whether Defendants maintained accurate payroll records as required by California Labor Code section 1174(d);

(h)  Whether Defendants failed to pay earned overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, due to Plaintiffs and class members upon their discharge;

(i)  Whether Defendants failed timely to pay overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, to Plaintiffs and class members during their employment;

(j)  Whether Defendants failed to pay Plaintiffs and class members for the costs of mandatory physical examinations and/or drug testing;

(k)  Whether Defendants failed to properly calculate the "regular rate" of pay upon which Plaintiffs' and class members' sick leave rate of pay was based;

(l)  Whether Defendants failed to provide Plaintiffs and/or class members with suitable seating;

(m)  Whether Defendants failed to reimburse Plaintiffs and class members

for necessary and required business-related expenditures and/or losses
incurred by them in the scope of their employment;

(n)    Whether Defendants failed to provide Plaintiffs and/or class members
with safety devices and safeguards, such as personal protective
equipment;

(o)    Whether Defendants engaged in unlawful and unfair business practices
in violation of California Business & Professions Code sections 17200,
*et seq.*; and

(p)    The appropriate amount of damages, restitution, or monetary penalties
resulting from Defendants' violations of California law.

**FIRST CAUSE OF ACTION**

**Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

**(Against all Defendants)**

59.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each
and every allegation set forth above.

60.    Labor Code section 1198 makes it illegal to employ an employee under
conditions of labor that are prohibited by the applicable wage order.  California Labor Code
section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall
be the . . . standard conditions of labor for employees.  The employment of any employee . . .
under conditions of labor prohibited by the order is unlawful."

61.    California Labor Code section 1198 and the applicable IWC Wage Order
provide that it is unlawful to employ persons without compensating them at a rate of pay
either time-and-one-half or two-times that person's regular rate of pay, depending on the
number of hours worked by the person on a daily or weekly basis.

62.    Specifically, the applicable IWC Wage Order provides that Defendants are and
were required to pay Plaintiffs and class members working more than eight (8) hours in a day
or more than forty (40) hours in a workweek, at the rate of time and one-half (1½) for all
hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a

1    workweek.

2        63.    The applicable IWC Wage Order further provides that Defendants are and were

3    required to pay Plaintiffs and class members working more than twelve (12) hours in a day,

4    overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's

5    regular rate of pay includes all remuneration for employment paid to, or on behalf of, the

6    employee, including nondiscretionary bonuses and incentive pay.

7        64.    California Labor Code section 510 codifies the right to overtime compensation

8    at one and one-half (1½) times the regular rate of pay for hours worked in excess of eight (8)

9    hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the

10   seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate

11   of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours

12   in a day on the seventh (7th) day of work.

13       65.    During the relevant time period, Defendants willfully failed to pay all overtime

14   wages owed to Plaintiffs and class members.  During the relevant time period, Plaintiffs and

15   class members were not paid overtime premiums for all of the hours they worked in excess of

16   eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40)

17   hours in a week, because all hours worked were not recorded.

18       66.    First, during the relevant period, Defendants had a company-wide policy and/or

19   practice of improperly rounding employees' clock-in and clock-out duration times in their

20   timekeeping system to the nearest quarter (0.25) of an hour.  Defendants' rounding policy

21   resulted in the failure to compensate Plaintiffs and class members fully for all hours worked,

22   causing Plaintiffs and class members to not be paid overtime wages for all of the overtime

23   hours they actually worked.  Defendants' policy of rounding was unfair and has, over time,

24   resulted in the underpayment of wages to Plaintiffs and class members.  To the extent

25   Defendants' rounding policy has taken away time worked that was eligible for overtime,

26   Plaintiffs and class members were denied overtime pay for all hours worked.

27       67.    Second, Defendants had a company-wide practice and/or policy of requiring

28   Plaintiffs and class members to perform work-related tasks while off-the-clock, but prevented

1    them from accounting for and recording this time in the timekeeping system.  For example,

2    approximately twice per month, Plaintiff Torres and class members were asked to pick up

3    materials from other store locations on their way into work, which could take 15-20 minutes

4    to complete, but were prevented from clocking in until their scheduled shift start-times.

5    Plaintiff Torres and class members would also report to work prior to the start of their

6    scheduled shifts to open the stores for customers, but were not permitted clock in until their

7    scheduled shift start-times.  Additionally, approximately 3-5 times per week, Plaintiff Torres

8    and class members were asked to make deliveries to customers or drop off materials to other

9    store locations on their way home, after they had clocked out for their scheduled shifts, which

10   took around 30-60 minutes per instance.  Furthermore, twice per month, Plaintiff Vandagriff

11   and class members were also required to respond, on their personal cellular phones, to

12   communications from Defendants' management regarding work-related matters and

13   assignments, after their scheduled shifts.  These off-the-clock conversations could last up to

14   five (5) minutes per instance.  Thus, Defendants failed to track all hours Plaintiffs and class

15   members spent working before clocking in and/or after clocking out, and Plaintiffs and class

16   members received no compensation for this time.

17        68.    Third, during the relevant period, Defendants had, and continue to have, a

18   company-wide policy and/or practice of understaffing their worksites while assigning heavy

19   workloads, resulting in a failure to provide Plaintiffs and class members with adequate meal

20   period coverage.  As a result of this lack of meal period coverage, Plaintiffs and class

21   members were not always afforded uninterrupted 30-minute meal periods during shifts when

22   they were entitled to receive a meal period.  For example, Plaintiffs were required to perform

23   their duties, such as completing sales, assisting customers, picking orders, wrapping pallets, or

24   making deliveries while clocked out for their unpaid meal periods.  Thus, Plaintiffs and class

25   members missed meal periods to complete their assigned workloads.  Defendants did not pay

26   Plaintiffs and class members for the time they continued to perform tasks during meal periods.

27        69.    Additionally, Defendants, on a company-wide basis, had a practice of failing to

28   schedule meal periods, which, in conjunction with assigning heavy workloads, further caused

Plaintiffs and class members to not be relieved of their duties for compliant meal periods. Thus, Plaintiffs and class members missed meal periods to complete their assigned workloads. Defendants did not pay Plaintiffs and class members for the time they continued to perform tasks during meal periods. Further, on information and belief, because Defendants frowned upon employees accruing meal period penalties, when Plaintiffs and class members failed to clock themselves out at designated meal period start times, they were subject to Defendants altering their time records and deducting time for meal periods that were not taken. Alternatively, Defendants' supervisors adjusted employee time records to show compliant meal periods, even if none were taken. Consequently, Plaintiffs and class members performed work during meal periods for which they were not paid.

70.    Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiffs and class members were performing assigned duties during their meal periods and performing work off-the-clock before or after their shifts, and were suffered or permitted to perform work for which they were not paid. Because Plaintiffs and class members worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Plaintiffs and class members were not paid overtime wages for all of the overtime hours they actually worked.

71.    Furthermore, on information and belief, Defendants did not pay Plaintiffs and class members the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, Defendants paid Plaintiffs and class members incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration. However, in violation of the California Labor Code, Defendants failed to incorporate all compensation, including incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when Plaintiffs and class members worked overtime and received these other forms of pay, Defendants failed to pay all overtime wages by paying a lower overtime rate than

1    required.

2        72.    Specifically, Defendants paid Plaintiff Torres and class members

3    nondiscretionary bonuses and/or commission payments related to sales made from the

4    accounts they managed or sales for their retail locations.  Defendants also paid Plaintiffs and

5    class members fringe benefits pay.  On information and belief, some of these nondiscretionary

6    bonuses and/or commission payments were listed on Plaintiff Torres's and class members'

7    wage statements as "Commissions ISM" or "Cm1 O/S Com," and fringe benefit payments

8    were listed on Plaintiffs' and class members' wage statements as "Frn Fringe."  During pay

9    periods that Plaintiffs and class members were paid overtime wages, Defendants did not

10   always incorporate the nondiscretionary bonuses, commission pay, incentive pay, and/or

11   fringe benefit pay into Plaintiffs' and class members' regular rate of pay and, as a result, paid

12   them at incorrect and lower rates of pay for overtime hours worked.  Specifically, Defendants

13   paid Plaintiffs and class members 1.5 times their hourly rate of pay instead of 1.5 times their

14   regular rate of pay.  Defendants' failure to properly calculate the overtime rates of pay based

15   on all remuneration paid has resulted in an underpayment of overtime wages to Plaintiffs and

16   class members on a company-wide basis.

17       73.    Defendants' failure to pay Plaintiffs and class members the balance of overtime

18   compensation as required by California law, violates the provisions of California Labor Code

19   sections 510 and 1198.  Pursuant to California Labor Code section 1194, Plaintiffs and class

20   members are entitled to recover their unpaid overtime compensation, as well as interest, costs,

21   and attorneys' fees.

22                    **SECOND CAUSE OF ACTION**

23   **Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid**

24                          **Minimum Wages**

25                      **(Against all Defendants)**

26       74.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each

27   and every allegation set forth above.

28       75.    At all relevant times, California Labor Code sections 1182.12, 1194, 1197,

1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful. Compensable work time is defined in Wage Order No. 7 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

76.    During the relevant time period, Defendants have implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff Vandagriff and class members undergo health screenings and temperature checks before their scheduled shifts. Plaintiff Vandagriff and class members followed Defendants' instructions and completed the required health screenings before Defendants permitted them to clock in for their shifts. Even though Defendants required these health screenings, Defendants did not provide Plaintiff Vandagriff and class members a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory health screenings and temperature checks.

77.    Also, as stated above, Defendants had a company-wide policy and/or practice of rounding Plaintiffs' and class members' hourly clock-in and clock-out duration times in their timekeeping system to the nearest quarter hour, resulting in the failure to compensate them for all hours worked. Furthermore, as set forth above, Plaintiffs and class members were required to perform duties off-the-clock before and after their scheduled shifts, such as responding to phone calls from supervisors, making deliveries, and/or picking up supplies from other locations, time for which they were not paid. As also stated above, due to Defendants' policy and/or practice of understaffing their locations while assigning heavy workloads, Plaintiffs and class members were forced to forgo meal periods and instead continue to perform their duties during unpaid meal periods.

78.    Furthermore, Defendants maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations. At all times, Defendants were in control of scheduling the time period for the

testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. For example, Defendants gave Plaintiff Vandagriff strict instructions to obtain drug testing and a physical examination, and Plaintiff Vandagriff underwent the testing for the sole benefit of Defendants. Plaintiff Vandagriff followed Defendants' instructions and spent 1.5 hours total traveling to and from the medical facility designated by Defendants, and spent an additional 45-60 minutes waiting at the medical facility and undergoing the requisite testing. As a further example, Defendants gave Plaintiff Torres strict instructions to obtain COVID-19 testing, and Plaintiff Torres underwent the testing for the sole benefit of Defendants. Plaintiff Torres followed Defendants' instructions and spent 20-30 minutes traveling to and from a medical facility to undergo the requisite testing. However, Defendants did not compensate Plaintiffs and class members for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing, COVID-19 testing, and/or physical examinations.

79. Defendants did not pay minimum wages for all hours worked by Plaintiffs and class members. To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

80. Defendants' failure to pay Plaintiffs and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Pursuant to California Labor Code section 1194.2, Plaintiffs and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**THIRD CAUSE OF ACTION**

**Violations of California Labor Code, §§ 226.7, 512(a), 516, and 1198—Meal Period Violations**

**(Against all Defendants)**

81. Plaintiffs incorporate by reference and re-allege as if fully stated herein each

1  and every allegation set forth above.

2      82.    At all relevant times herein set forth, California Labor Code section 512(a)

3  provides that an employer may not require, cause, or permit an employee to work for a period

4  of more than five (5) hours per day without providing the employee with a meal period of not

5  less than thirty (30) minutes, except that if the total work period per day of the employee is

6  not more than six (6) hours, the meal period may be waived by mutual consent of both the

7  employer and the employee.  Under California law, first meal periods must start after no more

8  than five hours.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (Cal.

9  2012).

10     83.    At all relevant times herein set forth, California Labor Code sections 226.7,

11 512(a), 516, and 1198 provide that no employer shall require an employee to work during any

12 meal period mandated by an applicable order of the IWC.

13     84.    At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and

14 the applicable IWC Wage Order also require employers to provide a second meal period of

15 not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an

16 employee one (1) additional hour of pay at the employee's regular rate, except that if the total

17 hours worked is no more than twelve (12) hours, the second meal period may be waived by

18 mutual consent of the employer and the employee only if the first meal period was not waived.

19     85.    As stated, Defendants, on a company-wide basis, have systematically

20 discouraged and impeded Plaintiffs and class members from taking meal periods by failing to

21 schedule meal periods, while assigning heavy workloads, even though they are aware and

22 know that employees are entitled to such meal periods.  As a result of this uniform failure to

23 schedule meal periods, Plaintiffs and class members have not been provided timely,

24 uninterrupted 30-minute meal periods during their shifts in which they were entitled to receive

25 a meal period.  As a result of Defendants' practices and/or policies, Plaintiffs and class

26 members had to work through part or all of their meal periods and wait extended periods of

27 time before taking meal periods.

28     86.    Furthermore, on information and belief, because Defendants frowned upon

employees accruing meal period penalties, Defendants' management would adjust Plaintiffs' and class members' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by Defendants. However, Plaintiffs and class members worked through meal periods because there were not enough employees on duty to handle the heavy workload and tend to Defendants' customers.

87.    As a result of Defendants' company-wide practices and/or policies, Plaintiffs and class members would be forced to work in excess of five (5) hours before taking a meal period and, at times, had to forgo their meal periods altogether. For example, during his employment, Plaintiff Torres would miss his meal periods once per month due to the heavy workload and was instructed by management to clock out and continue working. Moreover, when Plaintiff Torres was provided with a meal period, he frequently received them after he worked five (5) hours. During the month of February 2020, Defendants did not provide Plaintiff Torres with a meal period until he worked in excess of five (5) hours on every shift he was eligible to receive a meal period that month. As a further example, Plaintiff Vandagriff was asked by management to make a delivery during her meal period and was advised to eat her meal in the company vehicle while driving to the delivery destination.

88.    Moreover, Defendants did not provide Plaintiffs and class members with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. During their employment, Plaintiffs worked shifts in excess of ten (10) hours or more per day, but were not provided a second 30-minute meal period. Plaintiffs and class members did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

89.    At all times herein mentioned, Defendants knew or should have known that, as a result of these policies, Plaintiffs and class members were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods. Defendants further knew or should have known that Defendants did not pay Plaintiffs and class members meal period premium wages when meal periods were late, interrupted,

shortened, or missed because Defendants adjusted employee time records to reflect compliant meal periods, even if none were taken.

90.     Moreover, Defendants engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of Defendants' practices and/or policies, Plaintiffs and class members have not received premium pay for all missed, late, and interrupted meal periods.  Alternatively, to the extent that Defendants did pay Plaintiffs and class members premium pay for missed, late, and interrupted meal periods, Defendants did not pay Plaintiffs and class members at the correct rate of pay for premiums because Defendants systematically failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.  As a result, Defendants failed to provide Plaintiffs and class members compliant meal periods in violation of California Labor Code sections 226.7, 512(a), and 516 and failed to pay the full meal period premiums due.

91.     Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), 516, and 1198.  Plaintiffs and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

## FOURTH CAUSE OF ACTION

## Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations

## (Against all Defendants)

92.     Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

93.     At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198 were applicable to Plaintiffs' and class members' employment by Defendants.

94.     At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as

1   practicable shall be in the middle of each work period" and that the "rest period time shall be

2   based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4)

3   hours or major fraction thereof" unless the total daily work time is less than three and one-half

4   (3½) hours.

5          95.     At all relevant times, California Labor Code section 226.7 provides that no

6   employer shall require an employee to work during any rest period mandated by an applicable

7   order of the California IWC.  To comply with its obligation to authorize and permit rest

8   periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an

9   employer must "relinquish any control over how employees spend their break time, and

10  relieve their employees of all duties—including the obligation that an employee remain on

11  call.  A rest period, in short, must be a period of rest."  *Augustus v. ABM Security Services,*

12  *Inc.*, 2 Cal. 5th 257, 269-270 (2016).  Pursuant to the applicable IWC Wage Order and

13  California Labor Code section 226.7(c), Plaintiffs and class members are entitled to recover

14  from Defendants one (1) additional hour of pay at their regular rates of pay for each work day

15  that a required rest period was not authorized and permitted.

16         96.     During the relevant time period, Defendants regularly failed to authorize and

17  permit Plaintiffs and class members to take a ten (10) minute rest period per each four (4)

18  hour period worked or major fraction thereof.  As with meal periods, Defendants' company-

19  wide practices, including assigning heavy workloads, prevented Plaintiffs and class members

20  from being relieved of all duty to take their rest periods.  For example, Defendants actively

21  discouraged Plaintiff Torres from taking rest periods by telling him that his rest periods were

22  included in his 60-minute meal period.  Additionally, Defendants failed to schedule rest

23  periods, which, coupled with Defendants' failure to provide adequate rest period coverage,

24  further led to Plaintiffs and class members not being authorized and permitted to take

25  compliant rest periods.  As a result of Defendants' practices and policies, Plaintiffs and class

26  members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10

27  hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.

28  For example, Plaintiffs never received a rest period throughout their employment due to the

1    lack of coverage and Defendants' failure to schedule rest periods.

2         97.    Furthermore, upon information and belief, during the relevant time period,

3    Defendants maintained and implemented a company-wide on-premises rest period policy,

4    which mandated that Plaintiffs and class members remain on the work premises during their

5    rest periods.  Because Plaintiffs and class members were restricted from leaving the premises

6    during rest periods, they were denied the ability to use their rest periods freely for their own

7    purposes, such as running personal errands.  Thus, Defendants effectively maintained control

8    over Plaintiffs and class members during rest periods.

9         98.    Defendants have also engaged in a systematic, company-wide practice and/or

10   policy of not paying rest period premiums owed when rest periods are not authorized and

11   permitted.  Alternatively, to the extent that Defendants did pay Plaintiffs and class members

12   one (1) additional hour of premium pay for missed rest periods, Defendants did not pay

13   Plaintiffs and class members at the correct rate of pay for premiums because Defendants failed

14   to include all forms of compensation, such as incentive pay, commission pay,

15   nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the

16   regular rate of pay.  As a result, Defendants denied Plaintiffs and class members rest periods

17   and failed to pay them rest period premiums due, in violation of Labor Code section 226.7,

18   516, and the applicable IWC Wage Order.

19        99.    Defendants' conduct violates the applicable IWC Wage Order and California

20   Labor Code sections 226.7, 516, and 1198.  Plaintiffs and class members are therefore entitled

21   to recover from Defendants one (1) additional hour of pay at the employee's regular rate of

22   compensation for each work day that a compliant rest period was not authorized and

23   permitted.

24                          **FIFTH CAUSE OF ACTION**

25   **Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage**

26              **Statements and Failure to Maintain Accurate Payroll Records**

27                          **(Against all Defendants)**

28        100.   Plaintiffs incorporate by reference and re-allege as if fully stated herein each

and every allegation set forth above.

101.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

102.    At all relevant times, Defendants have knowingly and intentionally provided Plaintiffs and Subclass members with uniform, incomplete, and inaccurate wage statements. For example, Defendants issued uniform wage statements to Plaintiffs and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; the name and address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(7), 226(a)(8), and 226(a)(9).

103.    First, because Defendants did not record the time Plaintiffs and Subclass members spent working off the clock, improperly rounded their total hours worked, and deducted time from their records for meal periods that were missed (and therefore time for which they should have been paid), Defendants did not list the correct amount of gross wages and net wages earned by Plaintiffs and Subclass members in compliance with section 226(a)(1) and 226(a)(5).  For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiffs and Subclass members in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and corresponding accurate number of work hours worked at each hourly rate in violation of section 226(a)(9).

104.    Second, because Defendants did not calculate Plaintiffs' and Subclass members' regular rate of pay correctly for purposes of paying overtime and paid sick leave,

1   Defendants did not list the correct amount of gross wages earned by Plaintiffs and Subclass

2   members in compliance with section 226(a)(1).  For the same reason, Defendants failed to list

3   the correct amount of net wages earned by Plaintiffs and Subclass members in violation of

4   section 226(a)(5).  Defendants also failed to correctly list all applicable hourly rates in effect

5   during the pay period, namely, correct overtime rates of pay and correct rates of pay for

6   premium wages, in violation of section 226(a)(9).

7       105.    Third, Defendants failed to list the last four digits of Plaintiffs' and Subclass

8   members' social security number or an employee identification number other than a social

9   security number on wage statements, in violation of section 226(a)(7).  For example,

10  Defendants systematically, and on a company-wide basis, failed to list a social security

11  number or employee identification number on Plaintiffs' and Subclass members' final wage

12  statements, including Plaintiff Torres's wage statement dated July 23, 2020, and on Plaintiff

13  Vandagriff's wage statement dated October 14, 2020.

14      106.    Fourth, and separate from these violations, Defendants issued uniform wage

15  statements to Plaintiffs and Subclass members that failed to correctly list the name and

16  address of the legal entity of the actual employer in violation of 226(a)(8).  The purpose of

17  section 226(a)(8) is to provide California employees with transparency as to the true identity

18  of their employer, to allow the employee to contact their employer during employment in the

19  future for various reasons, including, filing an administrative claim, judicial claim, or other

20  action to seek relief against their employer, to obtain unemployment benefits, etc.

21      107.    During the relevant time period, Defendants systematically, and on a company-

22  wide basis, issued wage statements to Plaintiffs and Subclass members that fail to list the

23  employing entity's name and address.  For example, Defendants uniformly failed to list the

24  employing entity's name and address on Plaintiffs' and Subclass members' final wage

25  statements, including Plaintiff Torres's wage statement dated July 23, 2020, and on Plaintiff

26  Vandagriff's wage statement dated October 14, 2020.

27      108.    The wage statement deficiencies also include, without limitation, failing to list

28  the number of piece-rate units earned and any applicable piece rate if the employee is paid on

a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which employees were paid; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

109.   California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, Defendants failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Plaintiffs and Subclass members, in violation of section 1198.   Also, as stated, Defendants engaged in a company-wide practice and/or policy of falsifying Plaintiffs' and Subclass members' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Plaintiffs and Subclass members.  Furthermore, in light of Defendants' failure to provide Plaintiffs and Subclass members with second 30-minute meal periods to which they were entitled, Defendants kept no records of meal start and end times for second meal periods.

110.   California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ."  At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiffs and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record

the off-the-clock hours that they worked and improperly rounding Plaintiffs' and Subclass

members' hourly clock-in and clock-out duration times in their timekeeping system.

111.    Plaintiffs and Subclass members are entitled to recover from Defendants the

greater of their actual damages caused by Defendants' failure to comply with California Labor

Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per

employee.

**SIXTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon**

**Termination**

**(Against all Defendants)**

112.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each

and every allegation set forth above.

113.    This cause of action is dependent upon, and wholly derivative of, the overtime

wages, minimum wages, sick leave pay, and/or meal and rest period premiums, that were not

timely paid to Plaintiffs and those class members no longer employed by Defendants upon

their termination.

114.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide

that if an employer discharges an employee, the wages earned and unpaid at the time of

discharge are due and payable immediately, and that if an employee voluntarily leaves his or

her employment, his or her wages shall become due and payable not later than seventy-two

(72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of

his or her intention to quit, in which case the employee is entitled to his or her wages at the

time of quitting.

115.    Defendants willfully failed to pay Plaintiffs and class members who are no

longer employed by Defendants the earned and unpaid wages set forth above, including but

not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period

premiums, either at the time of discharge, or within seventy-two (72) hours of their leaving

Defendants' employ.

1    116.    Defendants' failure to pay Plaintiffs and class members who are no longer

2    employed by Defendants their wages earned and unpaid at the time of discharge, or within

3    seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201

4    and 202.  Plaintiffs and class members are therefore entitled to recover from Defendants the

5    statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a

6    thirty (30) day maximum pursuant to California Labor Code section 203.

7                          **SEVENTH CAUSE OF ACTION**

8    **Violation of California Labor Code § 204—Failure to Timely Pay Wages During**

9                                    **Employment**

10                          **(Against all Defendants)**

11    117.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each

12    and every allegation set forth above.

13    118.    This cause of action is dependent upon, and wholly derivative of, the overtime

14    wages, minimum wages, sick leave pay, and/or meal and rest period premiums, that were not

15    timely paid to Plaintiffs and class members during their employment.

16    119.    At all times relevant herein set forth, Labor Code section 204 provides that all

17    wages earned by any person in any employment between the first (1st) and the fifteenth (15th)

18    days, inclusive, of any calendar month, other than those wages due upon termination of an

19    employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of

20    the month during which the labor was performed.

21    120.    At all times relevant herein, Labor Code section 204 provides that all wages

22    earned by any person in any employment between the sixteenth (16th) and the last day,

23    inclusive, of any calendar month, other than those wages due upon termination of an

24    employee, are due and payable between the first (1st) and the tenth (10th) day of the following

25    month.

26    121.    At all times relevant herein, Labor Code section 204 provides that all wages

27    earned for labor in excess of the normal work period shall be paid no later than the payday for

28    the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section

204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

122.    During the relevant time period, Defendants willfully failed to pay Plaintiffs and class members all wages due including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums, within the time periods specified by California Labor Code section 204.

123.    Defendants' failure to pay Plaintiffs and class members all wages due violates Labor Code section 204.  Plaintiffs and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210.

### EIGHTH CAUSE OF ACTION

### Violation of California Labor Code § 2802—Unpaid Business-Related Expenses

### (Against all Defendants)

124.    Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

125.    At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

126.    First, during the relevant time period, Defendants had a company-wide policy of requiring Plaintiffs and class members to utilize their own personal cellular phones and

cellular data to carry out their job duties, but Defendants failed to reimburse them for the costs of their work-related cellular phone expenses.  For example, Plaintiffs and class members were required to use their personal cellular phones to complete their work-related tasks, such as discussing ongoing assignments with Defendants' managers.  Plaintiff Torres and class members were also required to use their cellular data/GPS to assist them with their driving routes.  Although Defendants required Plaintiffs and class members to utilize their personal cellular phones to carry out their work-related responsibilities, Defendants failed to fully reimburse them for this cost.

127.    Second, Defendants had a company-wide policy of requiring Plaintiffs and class members to travel in their own personal vehicles to obtain mandatory drug testing, COVID-19 testing, and/or physical examinations, but did not reimburse them for their travel expenses, including mileage.  Defendants maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations.  At all times, Defendants were in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.

128.    For example, Defendants gave Plaintiff Vandagriff strict instructions to obtain drug testing, and Plaintiff Vandagriff underwent the required testing for the sole benefit of Defendants.  Specifically, Plaintiff Vandagriff followed Defendants' instructions, traveled 34 miles roundtrip in her personal vehicle to a medical facility in Modesto, California, and underwent Defendants' drug testing, but was not reimbursed for her mileage to and from the medical facility.  Although Defendants required Plaintiff Vandagriff and class members to undergo drug testing, Defendants never reimbursed them for their travel expenses.  As further example, Defendants required Plaintiff Torres to undergo COVID-19 testing in March 2020 and again in June 2020 before he could return to work.  Plaintiff Torres traveled 10 miles roundtrip in his personal vehicle from Defendants' Modesto store location to the Kaiser

Permanente medical facility in Modesto, California, and underwent Defendants' required testing for COVID-19, but was not reimbursed for his mileage to and from the medical facility. Moreover, Plaintiff Torres paid $250.00 out of pocket for his COVID-19 test in March 2020, and was not reimbursed for this expense.

129. Third, Defendants had a company-wide policy of requiring Plaintiff Torres and class members to utilize their own personal vehicles for work purposes, such as making deliveries to customers and transporting materials between store locations, but failed to reimburse them for all costs of travel, including mileage. Although Defendants required Plaintiff Torres and class members to utilize their own vehicles to complete these tasks as part of their work duties, Defendants did not reimburse them fully for all of their travel expenses.

130. Defendants could have provided Plaintiffs and class members with the actual tools for use on the job, such as company phones and company vehicles, or Defendants could have reimbursed employees for the costs of their cellular phones, mileage, travel expenses, and medical testing. Instead, Defendants passed these operating costs off onto Plaintiffs and class members. At all relevant times, Plaintiffs did not earn at least two (2) times the minimum wage.

131. Defendants' company-wide policy and/or practice of passing on their operating costs to Plaintiffs and class members violates California Labor Code section 2802. Defendants have intentionally and willfully failed to reimburse Plaintiffs and class members for necessary business-related expenses and costs.

132. Plaintiffs and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest.

**NINTH CAUSE OF ACTION**

**For Civil Penalties Pursuant to California Labor Code §§ 2698, *et seq.***

**(Against all Defendants)**

133. Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

134.    California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiffs to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5.  Section 2699.5 enumerates Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, and 2802.  Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiffs, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 246, 516, 1182.12, 6401, and 6403.

135.    Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

(a)    Violation of Labor Code sections 510, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiffs and other aggrieved employees with all required overtime pay and failure to properly calculate the overtime rates paid to Plaintiffs and other aggrieved employees, as alleged herein;

(b)     Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiffs and other aggrieved employees with at least minimum wages for all hours worked, as alleged herein;

(c)    Violation of Labor Code sections 226.7, 512(a), 516, 1198, and the applicable IWC wage order for Defendants' failure to provide Plaintiffs and other aggrieved employees with meal periods, as alleged herein;

(d)    Violation of Labor Code sections 226.7, 516, 1198, and the applicable IWC wage order for Defendants' failure to authorize and permit Plaintiffs and other aggrieved employees to take rest periods, as alleged herein;

(e)    Violation of Labor Code sections 226(a), 1198, and the applicable IWC wage order for failure to provide accurate and complete wage statements to Plaintiffs and other aggrieved employees, as alleged herein;

(f)     Violation of Labor Code sections 1174(d), 1198, and the applicable
        IWC wage order for failure to maintain payroll records as alleged
        herein;

(g)     Violation of Labor Code sections 201, 202, and 203 for failure to pay all
        earned wages upon termination, as alleged herein;

(h)     Violation of Labor Code section 204 for failure to pay all earned wages
        during employment, as alleged herein;

(i)     Violation of Labor Code section 222.5 for failure to compensate
        Plaintiffs and other aggrieved employees for mandatory physical
        examinations and/or drug testing as set forth below;

(j)     Violation of Labor Code section 246 for failure to properly calculate the
        sick leave paid to Plaintiff Torres and other aggrieved employees, as set
        forth below;

(k)     Violation of Labor Code section 1198 for failing to provide suitable
        seating to other aggrieved employees, as set forth below;

(l)     Violation of Labor Code section 2802 for failure to reimburse Plaintiffs
        and other aggrieved employees for all business expenses necessarily
        incurred, as alleged herein; and

(m)     Violation of Labor Code sections 6401 and 6403 for failure to provide
        safety devices and safeguards, such as personal protective equipment, to
        other aggrieved employees, as set forth below.

136.    At all relevant times herein, California Labor Code section 222.5 requires
employers to pay for the costs an employee incurs for obtaining any medical or physical
examination taken.

137.    During the relevant time period, Defendants have implemented, on a company-
wide basis, an employer-imposed requirement that Plaintiff Vandagriff and other aggrieved
employees undergo mandatory health screenings and temperature checks before their
scheduled shifts.  As stated, Plaintiff Vandagriff and other aggrieved employees followed

Defendants' instructions and completed the required health screenings before Defendants permitted them to clock in for their shifts.  Even though Defendants required these health screenings, Defendants did not compensate Plaintiff Vandagriff and other aggrieved employees for the time they spent undergoing the mandatory health screenings and temperature checks.

138.    Moreover, at all times relevant herein, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiffs and other aggrieved employees undergo mandatory drug testing, COVID-19 testing, and/or physical examinations, but required them to do so at their own expense.  As stated, Defendants had a company-wide policy requiring that all employees, including Plaintiffs and other aggrieved employees, travel to a specified medical facility on their own time and using their own personal vehicles to undergo drug testing, COVID-19 testing, and/or physical examinations.  At all times, Defendants were in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider/facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.

139.    As stated, during the relevant time period, Defendants gave Plaintiff Vandagriff strict instructions to obtain drug testing, and Plaintiff Vandagriff underwent the required testing for the sole benefit of Defendants.  Specifically, Plaintiff Vandagriff followed Defendants' instructions, traveled 34 miles roundtrip (for approximately 1.5 hours total) in her personal vehicle to a medical facility in Modesto, California, and spent 45-60 minutes waiting at the medical facility and undergoing the requisite testing.  As further example, Defendants required Plaintiff Torres to undergo COVID-19 testing in March 2020 and again in June 2020 before he could return to work.  Plaintiff Torres traveled 10 miles roundtrip (for approximately 20-30 minutes) in his personal vehicle from Defendants' Modesto store location to the Kaiser Permanente medical facility in Modesto, California, and underwent Defendants' required testing for COVID-19.  Moreover, Plaintiff Torres paid $250.00 out of pocket for his COVID-19 test in March 2020.

140.    However, Defendants did not compensate Plaintiffs and other aggrieved

employees for the time they spent traveling to and from their drug testing, COVID-19 testing, and/or physical examinations, or for the time they spent undergoing the health screenings, drug testing, COVID-19 testing, and/or physical examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities.  Moreover, Defendants failed to reimburse Plaintiff Torres and other aggrieved employees for out-of-pocket costs for taking COVID-19 tests.  Defendants' policy and/or practice of not paying for all costs Plaintiffs and other aggrieved employees incurred undertaking mandatory health screenings, drug testing, COVID-19 testing, and/or physical examinations is in violation of California Labor Code section 222.5.  Plaintiffs and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

141.    At all relevant times herein, California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked.  Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment.  Further, Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

142.    During the relevant time period, Defendants did not pay Plaintiff Torres and other aggrieved employees the correct sick leave rates of pay.  As stated, in addition to an hourly wage, Defendants paid Plaintiffs and other aggrieved employees incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration.  However, in violation of the California Labor Code, Defendants failed to

FIRST AMENDED CLASS ACTION COMPLAINT

incorporate all remunerations, including incentive pay, commission pay, nondiscretionary bonuses, and/or fringe benefit pay, into the calculation of the regular rate of pay for purposes of calculating the sick leave rate. Therefore, during times when Plaintiff Torres and other aggrieved employees took sick leave and received these other forms of pay, Defendants failed to pay all sick leave benefits by paying a lower sick leave rate than required. Specifically, Defendants paid Plaintiff Torres and other aggrieved employees sick leave based on their hourly rate of pay instead of their regular rate of pay.

143. For example, during the pay period ending June 14, 2020, Plaintiff Torres took 1.72 hours of sick leave and earned $722.61 in commission pay during the same pay period. However, Defendants paid Plaintiff Torres's sick leave rate based on his hourly rate of $19.80 instead of his regular rate of pay. Defendants' failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to Plaintiff Torres and other aggrieved employees on a company-wide basis in violation of Labor Code 246(l). Plaintiff Torres and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 248.5 and/or 2699(a), (f), and (g).

144. At all relevant times herein, California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

145. California Code of Regulations, Title 8, section 11070(14)(B) provides that "[w]hen employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

146. During the relevant time period, Defendants violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(14)(B), because other

1    aggrieved employees are not allowed to sit, even during lulls in their work duties, nor are they

2    provided with suitable seats in reasonable proximity to their work areas.

3        147.    Plaintiffs allege that Defendants' California warehouse locations are generally

4    similar in their layout and design and there was, and continues to be, space near their work

5    areas (with reasonable or no modification to these work areas) to allow for the presence and

6    use of a seat or stool by other aggrieved employees during lulls in operation. Defendants

7    could have provided other aggrieved employees with a seat or stool in their work areas, but

8    instead denied other aggrieved employees suitable seating altogether and effectively forced

9    other aggrieved employees to stand throughout the day.

10        148.    Defendants did not provide other aggrieved employees with seats or stools in

11    reasonable proximity to their work area to allow them to use seats when it would not interfere

12    with the performance of their duties for times when they were not engaged in active duties

13    that require standing. In other words, to the extent other aggrieved employees have engaged

14    in duties in which the nature of the work required standing, Defendants denied them the use of

15    seats nearby during lulls in their work duties. Moreover, Defendants did not inform other

16    aggrieved employees of their rights to a seat or stool under California law.

17        149.    As a result of Defendants' company-wide policy and/or practice prohibiting

18    employees from sitting at any time, even when they are not engaged in active duties requiring

19    standing, and company-wide failure to provide seats in reasonable proximity to their work

20    areas, other aggrieved employees were forced to stand during shifts and denied seats.

21    Defendants' failure to provide suitable seating to other aggrieved employees violated and

22    continues to violate California Labor Code section 1198 and IWC Wage Order 7-2001,

23    Section 14(B). Other aggrieved employees are therefore entitled to recover civil penalties

24    pursuant to Labor Code sections 2699(a), (f), and (g).

25        150.    At all times herein set forth, California Labor Code section 6401 provides that

26    employers must furnish and use safety devices and safeguards, and adopt and use practices,

27    means, methods, operations, and processes which are reasonably adequate to render the

28    employment and place of employment safe and healthy. California Labor Code Section 6401

further provides that an employer must do everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

151. Defendants, on a company-wide basis, failed to provide other aggrieved employees with safety devices and safeguards, such as steel-toed boots, to keep them safe in the workplace. Despite the fact that Defendants required employees to wear certain personal protective equipment, including steel-toed boots, Defendants failed to provide such reasonably necessary equipment to other aggrieved employees to keep them safe.

152. Defendants' failure to provide other aggrieved employees with safety devices and safeguards for the workplace violates Labor Code sections 6401 and 6403. Other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

**TENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq.* –**

**Unlawful Business Practices**

**(Against all Defendants)**

153. Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

154. Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

155. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiffs, class members, and to the general public. Plaintiffs have suffered injury in fact and have lost money as a result of Defendants' unlawful business practices. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

156. Defendants' activities, as alleged herein, are violations of California law, and

constitute unlawful business acts and practices in violation of California Business &

Professions Code sections 17200, *et seq.*

157.    A violation of California Business & Professions Code sections 17200, *et seq.*

may be predicated on the violation of any state or federal law.  In the instant case, Defendants'

policies and practices have violated state law in at least the following respects:

(a)    Requiring non-exempt, hourly paid employees, including Plaintiffs and

class members, to work overtime without paying them proper

compensation in violation of California Labor Code sections 510 and

1198 and the applicable IWC Order, and paying Plaintiffs and class

members overtime at a lower rate than required by law by failing to

properly calculate the regular rate of pay for purposes of overtime, as

alleged herein;

(b)    Failing to pay at least minimum wage to Plaintiffs and class members in

violation of California Labor Code sections 1182.12, 1194, 1197,

1197.1, and 1198 and the applicable IWC Order, as alleged herein;

(c)    Failing to provide uninterrupted meal periods to Plaintiffs and class

members in violation of California Labor Code sections 226.7, 512(a),

516, 1198, and the applicable IWC Order, as alleged herein;

(d)    Failing to authorize and permit Plaintiffs and class members to take

uninterrupted rest periods in violation of California Labor Code sections

226.7, 516, 1198, and the applicable IWC Order, as alleged herein;

(e)    Failing to provide Plaintiffs and class members with accurate wage

statements and failing to maintain accurate payroll records in violation

of California Labor Code sections 226(a), 1174(d), 1198, and the

applicable IWC Order, as alleged herein;

(f)    Failing timely to pay all earned wages to Plaintiffs and class members in

violation of California Labor Code section 204 and the applicable IWC

Order, as alleged herein;

1

2

3

     (g)     Failing to pay Plaintiff and class members the costs of mandatory physical examinations and/or drug testing in violation of California Labor Code section 222.5, as set forth below;

4

5

6

     (h)     Failing to properly calculate the sick leave paid to Plaintiffs and class members in violation of Labor Code section 246(l), as set forth below; and

7

8

9

     (i)     Failing to reimburse Plaintiffs and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein.

10    158.    At all relevant times herein, California Labor Code section 222.5 requires

11 employers to pay for the costs an employee incurs for obtaining any medical or physical

12 examination.

13    159.    During the relevant time period, Defendants have implemented, on a company-

14 wide basis, an employer-imposed requirement that Plaintiff Vandagriff and class members

15 undergo mandatory health screenings and temperature checks before their scheduled shifts.

16 As stated, Plaintiff Vandagriff and class members followed Defendants' instructions and

17 completed the required health screenings before Defendants permitted them to clock in for

18 their shifts.  Even though Defendants required these health screenings, Defendants did not

19 compensate Plaintiff Vandagriff and class members for the time they spent undergoing the

20 mandatory health screenings and temperature checks.

21    160.    Moreover, at all times relevant herein, Defendants implemented, on a company-

22 wide basis, an employer-imposed requirement that Plaintiffs and class members undergo

23 mandatory drug testing, COVID-19 testing, and/or physical examinations, but required them

24 to do so at their own expense.  As stated, Defendants had a company-wide policy requiring

25 that all employees, including Plaintiffs and class members, travel to a specified medical

26 facility on their own time and using their own personal vehicles to undergo drug testing,

27 COVID-19 testing, and/or physical examinations.  At all times, Defendants were in control of

28 scheduling the date and time for the testing and/or physical examinations, selecting the

1    provider/facility where the testing and/or physical examinations were to take place, and

2    determining the scope of the testing and/or physical examinations.

3        161.    As stated, during the relevant time period, Defendants gave Plaintiff Vandagriff

4    strict instructions to obtain drug testing, and Plaintiff Vandagriff underwent the required

5    testing for the sole benefit of Defendants.  Specifically, Plaintiff Vandagriff followed

6    Defendants' instructions, traveled 34 miles roundtrip (for approximately 1.5 hours total) in her

7    personal vehicle to a medical facility in Modesto, California, and spent 45-60 minutes waiting

8    at the medical facility and undergoing the requisite testing.  As further example, Defendants

9    required Plaintiff Torres to undergo COVID-19 testing in March 2020 and again in June 2020

10    before he could return to work.  Plaintiff Torres traveled 10 miles roundtrip (for

11    approximately 20-30 minutes) in his personal vehicle from Defendants' Modesto store

12    location to the Kaiser Permanente medical facility in Modesto, California, and underwent

13    Defendants' required testing for COVID-19.  Moreover, Plaintiff Torres paid $250.00 out of

14    pocket for his COVID-19 test in March 2020.

15        162.    However, Defendants did not compensate Plaintiffs and class members for the

16    time they spent traveling to and from their drug testing, COVID-19 testing, and/or physical

17    examinations, or for the time they spent undergoing the health screenings, drug testing,

18    COVID-19 testing, and/or physical examinations, or reimburse them for the travel expenses

19    they incurred getting to and from the medical facilities.  Moreover, Defendants failed to

20    reimburse Plaintiff Torres and class members for out-of-pocket costs for taking COVID-19

21    tests.  Defendants' policy and/or practice of not paying for all costs Plaintiffs and class

22    members incurred undertaking mandatory health screenings, drug testing, COVID-19 testing,

23    and/or physical examinations is in violation of California Labor Code section 222.5.

24        163.    At all relevant times herein, California Labor Code sections 245.5, 246, 246.5,

25    247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more

26    days from the commencement of employment with paid sick days, to be accrued at least one

27    hour for every 30 hours worked.  Pursuant to California Labor Code section 246(b)(4),

28    employers must provide no less than 24 hours or three (3) days of paid sick leave (or

equivalent paid leave or paid time off) in each year of the employee's employment.  Further,

Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using

one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in

the same manner as the regular rate of pay for the workweek in which the employee uses paid

sick time, whether or not the employee actually works overtime in that workweek[;]" or 2)

"[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's

total wages, not including overtime premium pay, by the employee's total hours worked in the

full pay periods of the prior 90 days of employment."

164.    During the relevant time period, Defendants did not pay Plaintiffs and class

members the correct sick leave rates of pay.  As stated, in addition to an hourly wage,

Defendants paid Plaintiffs and class members incentive pay, commission pay,

nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration.  However,

in violation of the California Labor Code, Defendants failed to incorporate all remunerations,

including incentive pay, commission pay, nondiscretionary bonuses, and/or fringe benefit pay,

into the calculation of the regular rate of pay for purposes of calculating the sick leave rate.

Therefore, during times when Plaintiffs and class members took sick leave and received these

other forms of pay, Defendants failed to pay all sick leave benefits by paying a lower sick

leave rate than required.  Specifically, Defendants paid Plaintiffs and class members sick

leave based on their hourly rate of pay instead of their regular rate of pay.

165.    For example, during the pay period ending June 14, 2020, Plaintiff Torres took

1.72 hours of sick leave and earned $722.61 in commission pay during the same pay period.

However, Defendants paid Plaintiff Torres's sick leave rate based on his hourly rate of $19.80

instead of his regular rate of pay.  Similarly, Plaintiff Vandagriff took 4.25 hours of sick leave

during the pay period ending December 15, 2019, and received $192.83 of fringe benefit pay,

but Defendants paid her sick leave rate based on her hourly rate of $17.00 instead of her

regular rate of pay.  Defendants' failure to properly calculate the sick leave rates of pay based

on all remuneration paid has resulted in an underpayment of sick leave benefits to Plaintiffs

and class members on a company-wide basis in violation of Labor Code 246(l).

166. As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses. Plaintiffs and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

167. Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiffs and class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiffs and class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

**ELEVENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq.* –**

**Unfair Business Practices**

**(Against all Defendants)**

168. Plaintiffs incorporate by reference and re-allege as if fully stated herein each and every allegation set forth above.

169. Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

170. Defendants' conduct, as alleged herein, has been, and continues to be, unfair, and harmful to Plaintiffs, class members, and to the general public. Plaintiffs have suffered injury in fact and have lost money as a result of Defendants' unfair business practices. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

171. Defendants' activities, namely Defendants' company-wide practice and/or policy of not paying Plaintiffs and class members all meal and rest period premium wages due to them under Labor Code section 226.7, deprived Plaintiffs and class members of the compensation guarantee and enhanced enforcement implemented by section 226.7. The

statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to compensate employees, and secondarily to shape employer conduct. *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1149 (2015). The statutory benefits of section 226.7 were guaranteed to Plaintiffs and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq.* (*Id.*)

172.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on any unfair business practice. In the instant case, Defendants' policies and practices have violated the spirit of California's meal and rest period laws and constitute acts against the public policy behind these laws.

173.    Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiffs and class members are entitled to restitution for the class-wide loss of the statutory benefits implemented by section 226.7 withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all statutory benefits implemented by section 226.7 due to Plaintiffs and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

**REQUEST FOR JURY TRIAL**

Plaintiffs request a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs, on behalf of all others similarly situated, pray for relief and judgment against Defendants, jointly and severally, as follows:

1.    For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs. Plaintiffs reserve the right to amend their prayer for relief to seek a different amount.

**Class Certification**

2.    That this case be certified as a class action;

Page 46

1       3.       That Plaintiffs be appointed as the representatives of the Class and Subclass;

2       4.       That counsel for Plaintiffs be appointed as class counsel.

**As to the First Cause of Action**

5.       That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due to Plaintiffs and class members;

6.       For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7.       For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

8.       For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9.       For such other and further relief as the Court may deem equitable and appropriate.

**As to the Second Cause of Action**

10.       That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 by willfully failing to pay minimum wages to Plaintiffs and class members;

11.       For general unpaid wages and such general and special damages as may be appropriate;

12.       For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13.       For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14.       For liquidated damages pursuant to California Labor Code section 1194.2; and

15.       For such other and further relief as the Court may deem equitable and appropriate.

**As to the Third Cause of Action**

16. That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198 and applicable IWC Wage Order(s) by willfully failing to provide all meal periods to Plaintiffs and class members;

17. That the Court make an award to the Plaintiffs and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

18. For all actual, consequential, and incidental losses and damages, according to proof;

19. For premiums pursuant to California Labor Code section 226.7(c);

20. For pre-judgment interest on any unpaid meal period premiums from the date such amounts were due, or as otherwise provided by law;

21. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

22. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Fourth Cause of Action**

23. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7, 516, and 1198 and applicable IWC Wage Orders by willfully failing to authorize and permit Plaintiffs and class members to take all rest periods;

24. That the Court make an award to the Plaintiffs and class members of one (l) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted;

25. For all actual, consequential, and incidental losses and damages, according to proof;

26. For premiums pursuant to California Labor Code section 226.7(c);

27. For pre-judgment interest on any unpaid rest period premiums from the date such amounts were due, or as otherwise provided by law;

28. For attorneys' fees pursuant to California Code of Civil Procedure section

1   1021.5, or as otherwise provided by law; and

2       29.     For such other and further relief as the Court may deem equitable and

3   appropriate.

4                       **As to the Fifth Cause of Action**

5       30.     That the Court declare, adjudge and decree that Defendants violated the

6   recordkeeping provisions of California Labor Code section 226(a) and applicable IWC Wage

7   Orders as to Plaintiffs and Subclass members, and willfully failed to provide accurate itemized

8   wage statements thereto;

9       31.     For all actual, consequential, and incidental losses and damages, according to

10  proof;

11      32.     For injunctive relief pursuant to California Labor Code section 226(h);

12      33.     For statutory penalties pursuant to California Labor Code section 226(e);

13      34.     For attorneys' fees and costs pursuant to California Labor Code section

14  226(e)(1); and

15      35.     For such other and further relief as the Court may deem equitable and

16  appropriate.

17                      **As to the Sixth Cause of Action**

18      36.     That the Court declare, adjudge and decree that Defendants violated California

19  Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages,

20  sick leave pay, and/or meal and rest period premiums, owed at the time of termination of the

21  employment of Plaintiffs and other terminated class members;

22      37.     For all actual, consequential and incidental losses and damages, according to

23  proof;

24      38.     For waiting time penalties according to proof pursuant to California Labor

25  Code section 203 for all employees who have left Defendants' employ;

26      39.     For pre-judgment interest on any unpaid wages from the date such amounts

27  were due, or as otherwise provided by law;

28      40.     For attorneys' fees pursuant to California Code of Civil Procedure section

1  1021.5, or as otherwise provided by law; and

2      41.    For such other and further relief as the Court may deem equitable and

3  appropriate.

4              **As to the Seventh Cause of Action**

5      42.    That the Court declare, adjudge and decree that Defendants violated California

6  Labor Code section 204 by willfully failing to timely pay Plaintiffs and class members

7  overtime wages, minimum wages, sick leave pay, and/or meal and rest period premiums,

8  during their employment;

9      43.    For all actual, consequential and incidental losses and damages, according to

10  proof;

11      44.    For statutory penalties according to proof pursuant to California Labor Code

12  section 210;

13      45.    For pre-judgment interest on any unpaid wages from the date such amounts

14  were due, or as otherwise provided by law;

15      46.    For attorneys' fees pursuant to California Code of Civil Procedure section

16  1021.5, or as otherwise provided by law; and

17      47.    For such other and further relief as the Court may deem equitable and

18  appropriate.

19              **As to the Eighth Cause of Action**

20      48.    That the Court declare, adjudge and decree that Defendants violated California

21  Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-

22  related expenses and costs incurred by Plaintiffs and class members;

23      49.    For unpaid business-related expenses and such general and special damages as

24  may be appropriate;

25      50.    For pre-judgment interest on any unpaid business-related expenses from the

26  date such amounts were due, or as otherwise provided by law;

27      51.    For all actual, consequential, and incidental losses and damages, according to

28  proof;

FIRST AMENDED CLASS ACTION COMPLAINT

1   52.    For attorneys' fees and costs pursuant to California Labor Code
2   section 2802(c), or as otherwise provided by law; and
3   53.    For such other and further relief as the Court may deem equitable and
4   appropriate.
5   **As to the Ninth Cause of Action**
6   54.    That the Court declare, adjudge and decree that Defendants violated the
7   following California Labor Code provisions as to Plaintiffs and/or other aggrieved employees:
8   510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and
9   1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512, 516, and
10  1198 (by failing to provide all meal periods); 226.7, 516, and 1198 (by failing to authorize and
11  permit all rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate wage
12  statements and maintain accurate payroll records); 201, 202, and 203 (by failing timely to pay
13  all earned wages upon termination); 204 (by failing timely to pay all earned wages during
14  employment); 222.5 (by failing to pay the costs of mandatory drug testing and/or physical
15  examinations); 246 (by failing to properly calculate sick leave pay); 1198 (by failing to
16  provide suitable seating); 2802 (by failing to reimburse business expenses); and 6401 and
17  6403 (by failing to provide safety devices and safeguards);
18  55.    For civil penalties pursuant to California Labor Code sections 210, 226.3,
19  248.5, 256, 558, 1174.5, 1197.1, and/or 2699(a), (f) and (g), for violations of California Labor
20  Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d),
21  1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403;
22  56.    For attorneys' fees and costs pursuant to California Labor Code section
23  2699(g)(1), and any and all other relevant statutes, for Defendant's violations of California
24  Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d),
25  1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403;
26  57.    For pre-judgment and post-judgment interest as provided by law; and
27  58.    For such other and further relief as the Court may deem equitable and
28  appropriate.

FIRST AMENDED CLASS ACTION COMPLAINT

1  //

2  **As to the Tenth Cause of Action**

3  59.    That the Court declare, adjudge and decree that Defendants' conduct of failing

4  to provide Plaintiffs and class members all overtime wages due to them, failing to provide

5  Plaintiffs and class members all minimum wages due to them, failing to provide Plaintiffs and

6  class members all meal periods, failing to authorize and permit Plaintiffs and class members to

7  take all rest periods, failing to provide Plaintiffs and class members accurate and complete

8  wage statements, failing to maintain accurate payroll records for Plaintiffs and class members,

9  failing timely to pay Plaintiffs and class members all earned wages during employment,

10  failing to reimburse Plaintiffs and class members for the costs of mandatory drug testing

11  and/or physical examinations, failing to properly calculate Plaintiffs' and class members' sick

12  leave, and failing to reimburse Plaintiffs and class members for business-related expenses,

13  constitutes an unlawful business practice in violation of California Business and Professions

14  Code sections 17200, *et seq.*;

15  60.    For restitution of unpaid wages to Plaintiffs and all class members and

16  prejudgment interest from the day such amounts were due and payable;

17  61.    For the appointment of a receiver to receive, manage and distribute any and all

18  funds disgorged from Defendants and determined to have been wrongfully acquired by

19  Defendants as a result of violations of California Business & Professions Code sections

20  17200, *et seq.*;

21  62.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

22  California Code of Civil Procedure section 1021.5; and

23  63.    For such other and further relief as the Court may deem equitable and

24  appropriate.

25  **As to the Eleventh Cause of Action**

26  64.    That the Court declare, adjudge and decree that Defendants' conduct of denying

27  Plaintiffs and class members the statutory benefits guaranteed under section 226.7 constitutes

28  an unfair business practice in violation of California Business and Professions Code sections

1    17200, *et seq.*;

2        65.    For restitution of the statutory benefits under section 226.7 unfairly withheld

3    from Plaintiffs and class members and prejudgment interest from the day such amounts were

4    due and payable;

5        66.    For the appointment of a receiver to receive, manage and distribute any and all

6    funds disgorged from Defendants and determined to have been wrongfully acquired by

7    Defendants as a result of violations of California Business & Professions Code sections

8    17200, *et seq.*;

9        67.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

10   California Code of Civil Procedure section 1021.5;

11       68.    For pre-judgment and post-judgment interest as provided by law; and

12       69.    For such other and further relief as the Court may deem equitable and

13   appropriate.

14

15   Dated: April 12, 2021                 Respectfully submitted,

16                                         Capstone Law APC

17

18                              By: _____

19                                         Robert Drexler
                                           Molly DeSario
20                                         Jonathan Lee
                                           Helga Hakimi

21
                                           Attorneys for Plaintiffs Gerardo Torres
22                                         and Tawni Vandagriff

23

24

25

26

27

28

# Exhibit 1

# Capstone
## LAW APC

1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ANTHONY CASTILLO
310.712.8169 Direct
Anthony.Castillo@capstonelawyers.com

November 5, 2020

VIA ONLINE SUBMISSION

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/295)

Subject:        *Gerardo Torres v. Rexel USA, Inc.*

Dear PAGA Administrator:

This office represents Gerardo Torres in connection with his claims under the California Labor Code. Mr. Torres was an employee of REXEL USA, INC. ("REXEL").

The employer may be contacted directly at the address below:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

Mr. Torres intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Mr. Torres seeks relief on behalf of himself, the State of California, and other persons who are or were employed by REXEL as a non-exempt, hourly paid employee in California at REXEL's retail, warehouse, and/or distribution center locations and who received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

REXEL employed Mr. Torres as an hourly paid, non-exempt employee from approximately June 2011 to July 2020. Mr. Torres worked for REXEL as a Warehouse Driver, Counter Sales Representative, and Inside Sales Representative at its store location in Modesto, California. During his employment, Mr. Torres typically worked eight (8) hours or more per day, five (5) days per week, from 6:00 a.m. to 3:30 p.m. At the time Mr. Torres's employment ended, he earned approximately $22.00 per hour, plus commissions. His job duties included, without limitation, conducting inventory, creating reports, assisting customers, making sales calls, managing client accounts, transferring supplies from other store locations, and making deliveries, as needed.

1

REXEL committed one or more of the following Labor Code violations against Mr. Torres, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

## REXEL's Company-Wide and Uniform Payroll and HR Practices

REXEL USA, INC. is a Delaware corporation and is a global electrical supply and services company, serving industrial, residential, and commercial markets. Upon information and belief, REXEL maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Dallas, Texas, for all non-exempt, hourly paid employees working for REXEL in California, including Mr. Torres and other aggrieved employees. At all relevant times, REXEL issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Mr. Torres and other aggrieved employees, regardless of its location or position.

Upon information and belief, REXEL maintains a centralized Payroll department at its corporate headquarters in Dallas, Texas, which processes payroll for all non-exempt, hourly paid employees working for REXEL in California, including Mr. Torres and other aggrieved employees. Further, REXEL issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Mr. Torres and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended. In other words, REXEL utilized the same methods and formulas when calculating wages due to Mr. Torres and other aggrieved employees in California.

## Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

REXEL willfully failed to pay all overtime wages owed to Mr. Torres and other aggrieved employees. During the relevant time period, Mr. Torres and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

---

[1] These facts, theories, and claims are based on Mr. Torres's experience and counsel's review of those records currently available relating to Mr. Torres's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Mr. Torres reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

First, during the relevant period, REXEL had a company-wide policy and/or practice of improperly rounding employees' clock-in and clock-out duration times in their timekeeping system to the nearest quarter (0.25) of an hour. REXEL's rounding policy resulted in the failure to compensate Mr. Torres and other aggrieved employees fully for all hours worked, causing Mr. Torres and other aggrieved employees to not be paid overtime wages for all of the overtime hours they actually worked. REXEL's policy of rounding was unfair and has, over time, resulted in the underpayment of wages to Mr. Torres and other aggrieved employees. To the extent REXEL's rounding policy has taken away time worked that was eligible for overtime, Mr. Torres and other aggrieved employees were denied overtime pay for all hours worked.

Second, REXEL had a company-wide practice and/or policy of requiring Mr. Torres and other aggrieved employees to perform work-related tasks while off-the-clock, but prevented them from accounting for and recording this time in the timekeeping system. For example, Mr. Torres and other aggrieved employees were asked to pick up materials from other store locations on their way into work, but were prevented from clocking in until their scheduled shift start-times. Mr. Torres and other aggrieved employees would also report to work prior to the start of their scheduled shifts to open the stores for customers, but were not permitted clock in until their scheduled shift start-times. Additionally, Mr. Torres and other aggrieved employees were asked to make deliveries to customers or drop off materials to other store locations on their way home, after they had clocked out for their scheduled shifts. Other aggrieved employees were also required to respond to communications from REXEL's management while off-the-clock regarding work-related matters and assignments on their personal cellular phones after their shifts. Thus, REXEL failed to track all hours Mr. Torres and other aggrieved employees spent working before clocking in and/or after clocking out, and Mr. Torres and other aggrieved employees received no compensation for this time.

Third, during the relevant period, REXEL had, and continues to have, a company-wide policy and/or practice of understaffing its worksites while assigning heavy workloads, resulting in a failure to provide Mr. Torres and other aggrieved employees with adequate meal period coverage. As a result of this lack of meal period coverage, Mr. Torres and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period. For example, Mr. Torres was required to perform his duties, such as taking inventory, completing sales, or assisting customers, while clocked out for his unpaid meal periods. Thus, Mr. Torres and other aggrieved employees missed meal periods to complete their assigned workloads. REXEL did not pay Mr. Torres and other aggrieved employees for the time they continued to perform tasks during meal periods.

Additionally, REXEL, on a company-wide basis, had a practice of failing to schedule meal periods, which, in conjunction with assigning heavy workloads, further caused Mr. Torres and other aggrieved employees to not be relieved of their duties for compliant meal periods. Thus, Mr. Torres and other aggrieved employees missed meal periods to complete their assigned workloads. REXEL did not pay Mr. Torres and other aggrieved employees for the time they continued to perform tasks during meal periods. Further, on information and belief, because REXEL frowned upon employees accruing meal period penalties, when Mr. Torres and other aggrieved employees failed to clock themselves out at designated meal period start times, they were subject to REXEL altering their time records and deducting time for meal periods that were not taken. Alternatively, REXEL's supervisors adjusted employee time records to show compliant meal periods, even if none were taken. Consequently, Mr. Torres and other aggrieved employees performed work during meal periods for which they were not paid.

3

REXEL knew or should have known that as a result of these company-wide practices and/or policies, Mr. Torres and other aggrieved employees were performing assigned duties during their meal periods and performing work off-the-clock before or after their shifts, and were suffered or permitted to perform work for which they were not paid.  Because Mr. Torres and other aggrieved employees worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.  Therefore, Mr. Torres and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

Furthermore, on information and belief, REXEL did not pay Mr. Torres and other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated.  In addition to an hourly wage, REXEL paid Mr. Torres and other aggrieved employees incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration.  However, in violation of the California Labor Code, REXEL failed to incorporate all compensation, including incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate.  Therefore, during times when Mr. Torres and other aggrieved employees worked overtime and received these other forms of pay, REXEL failed to pay all overtime wages by paying a lower overtime rate than required.

Specifically, REXEL paid Mr. Torres and other aggrieved employees nondiscretionary bonuses and/or commission payments related to sales made from the accounts they managed or sales for their retail locations.  REXEL also paid Mr. Torres and other aggrieved employees fringe benefits pay.  On information and belief, some of these nondiscretionary bonuses and/or commission payments were listed on Mr. Torres's and other aggrieved employees' wage statements as "Commissions ISM" or "Cm1 O/S Com," and fringe benefit payments were listed on Mr. Torres's and other aggrieved employees' wage statements as "Frn Fringe."  During pay periods that Mr. Torres and other aggrieved employees were paid overtime wages, REXEL did not always incorporate the nondiscretionary bonuses, commission pay, incentive pay, and/or fringe benefit pay into Mr. Torres's and other aggrieved employees' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked.  Specifically, REXEL paid Mr. Torres and other aggrieved employees 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay.  REXEL's failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Mr. Torres and other aggrieved employees on a company-wide basis.

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC.  The payment of a lesser wage than the minimum so fixed is unlawful.  Compensable work time is defined in Wage Order No. 7 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code. Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

During the relevant time period, as stated above, REXEL had a company-wide policy and/or practice of rounding Mr. Torres's and other aggrieved employees' hourly clock-in and clock-out duration times in their timekeeping system to the nearest quarter hour, resulting in the failure to compensate them for all hours worked.  Furthermore, as set forth above, Mr. Torres and other aggrieved employees were required to perform duties off-the-clock before and after their scheduled shifts, performing tasks such as responding to phone calls from supervisors, making deliveries, and/or picking up supplies from other locations, time for which they were not paid.  As also stated above, due to REXEL's policy and/or practice of understaffing its locations while assigning heavy workloads, Mr. Torres and other aggrieved employees were forced to forgo meal periods and instead continue to perform their duties during unpaid meal periods.

Also, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts.  Other aggrieved employees followed REXEL's instructions and completed the required health screenings before REXEL permitted them to clock in for their shifts.  Even though REXEL required these health screenings, REXEL did not provide other aggrieved employees a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory health screenings and temperature checks.

Furthermore, REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations.  At all times, REXEL was in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  REXEL gave Mr. Torres strict instructions to obtain COVID-19 testing, and Mr. Torres underwent the testing for the sole benefit of REXEL.  Mr. Torres followed REXEL's instructions and spent 20-30 minutes traveling to and from a medical facility to undergo the requisite testing.  As a further example, REXEL gave other aggrieved employees strict instructions to obtain drug testing and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL.  Other aggrieved employees were required to travel in their own personal vehicles and spend time undergoing REXEL's mandatory drug tests and/or physical examinations.  However, REXEL did not compensate Mr. Torres and other aggrieved employees for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing, COVID-19 testing, and/or physical examinations.

Thus, REXEL did not pay at least minimum wages for off-the-clock hours that qualified for overtime premium payment.  Also, to the extent that these off-the-clock hours did not qualify for overtime premium payment, REXEL did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, and 1197.1.  Accordingly, REXEL regularly failed to pay at least minimum wages to Mr. Torres and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1 and 1198.

Mr. Torres and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a), 516, 1198 and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

As stated, REXEL, on a company-wide basis, has systematically discouraged and impeded Mr. Torres and other aggrieved employees from taking meal periods by failing to schedule meal periods, while assigning heavy workloads, even though it is aware and knows that employees are entitled to such meal periods. As a result of this uniform failure to schedule meal periods, Mr. Torres and other aggrieved employees have not been provided timely, uninterrupted 30-minute meal periods during their shifts in which they were entitled to receive a meal period. As a result of REXEL's practices and/or policies, Mr. Torres and other aggrieved employees had to work through part or all of their meal periods and wait extended periods of time before taking meal periods.

Furthermore, on information and belief, because REXEL frowned upon employees accruing meal period penalties, REXEL's management would adjust Mr. Torres's and other aggrieved employees' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by REXEL. However, Mr. Torres and other aggrieved employees worked through meal periods because there were not enough employees on duty to handle the heavy workload and tend to REXEL's customers.

As a result of REXEL's company-wide practices and/or policies, Mr. Torres and other aggrieved employees would be forced to work in excess of five (5) hours before taking a meal period and, at times, had to forgo their meal periods altogether. For example, during his employment, Mr. Torres would miss his meal periods due to the heavy workload and was instructed by management to clock out and continue working. As a further example, other aggrieved employees were asked by management to make deliveries during their meal periods and were advised to eat their meals in the company vehicles while driving to delivery destinations.

Moreover, REXEL did not provide Mr. Torres and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. During his employment, Mr. Torres worked shifts in excess of ten (10) hours or more per day, but was not provided a second 30-minute meal period. Mr. Torres and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

At all times herein mentioned, REXEL knew or should have known that, as a result of these policies, Mr. Torres and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods. REXEL further knew or should have known that it did not pay Mr. Torres and other aggrieved employees meal period premium wages when meal periods were late, interrupted, shortened, or missed because REXEL adjusted employee time records to reflect compliant meal periods, even if none were taken.

Moreover, REXEL engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of REXEL's practices and/or policies, Mr. Torres and other aggrieved employees have not received premium pay for all missed, late, and interrupted meal periods. Alternatively, to the extent that REXEL did pay Mr. Torres and other aggrieved employees premium pay for missed, late, and interrupted meal periods, REXEL did not pay Mr. Torres and other aggrieved employees at the correct rate of pay for premium wages because REXEL systematically failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198. Mr. Torres and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### <u>Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods</u>

California Labor Code sections 226.7, 516, 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc*., 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, REXEL regularly failed to authorize and permit Mr. Torres and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, REXEL's company-wide practices, including assigning heavy workloads, prevented Mr. Torres and other aggrieved employees from being relieved of all duty to take their rest periods. For example, REXEL actively discouraged Mr. Torres from taking rest periods by telling him that his rest periods were included in his 60-minute meal period. Additionally, REXEL failed to schedule rest periods, which, coupled with REXEL's failure

to provide adequate rest period coverage, further led to Mr. Torres and other aggrieved employees not being authorized and permitted to take compliant rest periods. As a result of REXEL's practices and policies, Mr. Torres and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.

Furthermore, upon information and belief, during the relevant time period, REXEL maintained and implemented a company-wide on-premises rest period policy, which mandated that Mr. Torres and other aggrieved employees remain on the work premises during their rest periods. Upon information and belief, REXEL's company-wide on-premises rest period policy prevented Mr. Torres and other aggrieved employees from being relieved of all duties for rest periods and caused them to perform work during rest periods.

REXEL also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted. Because of this practice and/or policy, Mr. Torres and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that REXEL did pay Mr. Torres and other aggrieved employees one (1) additional hour of premium pay for missed rest periods, REXEL did not pay Mr. Torres and other aggrieved employees at the correct rate of pay for premium wages because REXEL failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198. Mr. Torres and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. REXEL has not provided Mr. Torres and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, REXEL has knowingly and intentionally provided Mr. Torres and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, REXEL issued uniform wage statements to Mr. Torres and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; the name and address of the legal entity that is the employer; and

all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate.  Specifically, REXEL violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(7), 226(a)(8), and 226(a)(9).

First, because REXEL did not record the time Mr. Torres and other aggrieved employees spent working off the clock, improperly rounded their total hours worked, and deducted time from their records for meal periods that were missed (and therefore time for which they should have been paid), REXEL did not list the correct amount of gross wages and net wages earned by Mr. Torres and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively.  For the same reason, REXEL failed to accurately list the total number of hours worked by Mr. Torres and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Second, because REXEL did not calculate Mr. Torres's and other aggrieved employees' regular rate of pay correctly for purposes of paying overtime, REXEL did not list the correct amount of gross wages in compliance with section 226(a)(1).  For the same reason, REXEL also failed to list the correct amount of net wages in violation of section 226(a)(5).  REXEL also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9).

Third, REXEL failed to list the last four digits of Mr. Torres's and other aggrieved employees' social security number or an employee identification number other than a social security number on wage statements, in violation of section 226(a)(7).

Fourth, and separate from these violations, REXEL issued uniform wage statements to Mr. Torres and other aggrieved employees that failed to correctly list the correct name of the legal entity of the actual employer in violation of 226(a)(8).  The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, to obtain unemployment benefits, etc.  During the relevant time period, REXEL systematically, and on a company-wide basis, issued wage statements to Mr. Torres and other aggrieved employees that fail to list the employing entity's name and address.  *See example paystub below.*



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ."  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), REXEL willfully failed to maintain accurate payroll records for Mr. Torres and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and improperly rounding Mr. Torres's and other aggrieved employees' clock-in and clock-out duration times.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, REXEL failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Mr. Torres and other aggrieved employees, in violation of section 1198.  Also, as stated, REXEL engaged in a company-wide practice and/or policy of falsifying Mr. Torres's and other aggrieved employees' time records by recording that

compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Mr. Torres and other aggrieved employees.  Furthermore, in light of REXEL's failure to provide Mr. Torres and other aggrieved employees with second 30-minute meal periods to which they were entitled, REXEL kept no records of meal start and end times for second meal periods.

Because REXEL failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Mr. Torres and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Mr. Torres and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, REXEL failed to pay Mr. Torres and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

REXEL willfully failed to pay Mr. Torres and other aggrieved employees who are no longer employed by REXEL all their earned wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving REXEL's employ in violation of California Labor Code sections 201, 202, and 203.

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing**

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts. As stated, other aggrieved employees followed REXEL's instructions and completed the required health screenings before REXEL permitted them to clock in for their shifts. Even though REXEL required these health screenings, REXEL did not compensate other aggrieved employees for the time they spent undergoing the mandatory health screenings and temperature checks.

Moreover, at all times relevant herein, REXEL implemented, on a company-wide basis, an employer-imposed requirement that Mr. Torres and other aggrieved employees undergo mandatory drug testing, COVID-19 testing, and/or physical examinations, but required them to do so at their own expense. As stated, REXEL had a company-wide policy requiring that all employees travel to a specified medical facility on their own time and using their own personal vehicles to undergo drug testing, COVID-19 testing, and/or physical examinations. At all times, REXEL was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider/facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. For example, REXEL gave Mr. Torres strict instructions to obtain COVID-19 testing, and Mr. Torres followed REXEL's instructions and spent 20-30 minutes traveling to and from a medical facility to undergo the requisite testing for the sole benefit of REXEL, and paid $250.00 out-of-pocket for the COVID-19 test taken in March 2020.

However, REXEL did not compensate Mr. Torres and other aggrieved employees for the time they spent traveling to and from their drug testing, COVID-19 testing, and/or physical examinations, or for the time they spent undergoing the health screenings, drug testing, COVID-19 testing, and/or physical examinations. Moreover, REXEL failed to reimburse Mr. Torres and other aggrieved employees for the out-of-pocket costs for taking some COVID-19 tests. REXEL's policy and/or not paying for all costs Mr. Torres and other aggrieved employees incurred undertaking mandatory health screenings, drug testing, COVID-19 testing, and/or physical examinations is in violation of California Labor Code section 222.5.

Mr. Torres and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 14(B) – Failure to Provide Suitable Seating**

California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful." California Code of Regulations, Title 8, section 11070(14)(B) provides that "[w]hen employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

The IWC states that section 14(B) applies during "lulls in operation" when an employee, while still on the job, is not then actively engaged in any duties. *Kilby v. CVS Pharmacy, Inc.*, 368 P.3d 554, 565 (Cal. 2016), citing IWC, 1976 Wage Orders, Summary of Basic Provisions, Seats. When taken together, an employee is entitled to a seat under section 14(A) if his or her actual tasks at a discrete location make seated work feasible, while working there. *Id.* However, if other job duties take the employee to a different location where he or she must perform tasks requiring standing, the employee would be entitled to a seat under section 14(B) during "lulls in operation." *Id.*

REXEL's California warehouse locations are generally similar in their layout and design and there was, and continues to be, space near their work areas (with reasonable or no modification to these work areas) to allow for the presence and use of a seat or stool by other aggrieved employees during lulls in operation. REXEL could provide other aggrieved employees with a seat or stool in its work areas, but instead denies employees seating and forces other aggrieved employees to stand throughout the day.

REXEL did not provide other aggrieved employees with seats or stools in reasonable proximity to their work areas to allow them to use seats when it would not interfere with the performance of their duties for times when they were not engaged in active duties that require standing. In other words, to the extent other aggrieved employees engaged in duties in which the nature of the work required standing, REXEL denied them the use of seats nearby during lulls in their work duties. Moreover, REXEL did not inform other aggrieved employees of their rights to a seat or stool under California law.

As a result of REXEL's company-wide policy and/or practice of prohibiting employees from sitting at any time, even when they were not engaged in active duties requiring standing, and company-wide failure to provide seats in reasonable proximity to their work areas, other aggrieved employees were forced to stand during shifts and denied seats. REXEL's failure to provide suitable seating to other aggrieved employees violates California Labor Code section 1198 and IWC Wage Order 7-2001, Section 14(B).

Other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, and seek injunctive relief to bring REXEL into compliance with California's seating requirements, pursuant to Labor Code sections 1194.5 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 2802 – Unreimbursed Business Expenses**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc*., 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, REXEL had a company-wide policy of requiring Mr. Torres and other aggrieved employees to utilize their own personal cellular phones and cellular data to carry out their job duties, but REXEL failed to reimburse them for the costs of their work-related cellular phone expenses.  For example, Mr. Torres and other aggrieved employees were required to use their personal cellular phones to complete their work-related tasks, such as discussing ongoing assignments with REXEL's managers.  As a further example, Mr. Torres and other aggrieved employees were also required to use their cellular data/GPS to assist them with their driving routes.  Although REXEL required Mr. Torres and other aggrieved employees to utilize their personal cellular phones to carry out their work-related responsibilities, REXEL failed to fully reimburse them for this cost.

Second, REXEL had a company-wide policy of requiring Mr. Torres and other aggrieved employees to travel in their own personal vehicles to obtain mandatory drug testing, COVID-19 testing, and/or physical examinations, but did not reimburse them for their travel expenses, including mileage.  REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations.  At all times, REXEL was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  For example, REXEL required Mr. Torres to undergo COVID-19 testing in March 2020 and again in June 2020 before he could return to work.  Mr. Torres traveled 10 miles roundtrip in his personal vehicle from REXEL's Modesto store location to the Kaiser Permanente medical facility in Modesto, California, and underwent REXEL's required testing for COVID-19, but was not reimbursed for his mileage to and from the medical facility.  Moreover, Mr. Torres paid $250.00 out of pocket for his COVID-19 test in March 2020, and was not reimbursed for this expense.

Third, REXEL had a company-wide policy of requiring Mr. Torres and other aggrieved employees to utilize their own personal vehicles for work purposes, such as making deliveries to customers and transporting materials between store locations, but failed to reimburse them for all costs of travel, including mileage.  For example, Mr. Torres drove approximately 100 miles per week making deliveries to customers and driving to and from REXEL's store locations, but was never reimbursed for his mileage.  Although REXEL required Mr. Torres and other aggrieved employees to utilize their own vehicles to complete these tasks as part of their work duties, REXEL did not reimburse them fully for all of their travel expenses.

14

Fourth, REXEL, on a company-wide basis, mandated that other aggrieved employees purchase special safety shoes such as steel-toed boots, which they were required to wear while at work. Other aggrieved employees purchased steel-toed boots to wear inside REXEL's facilities, but were not reimbursed fully for these costs.

REXEL could have provided Mr. Torres and other aggrieved employees with the actual tools for use on the job, such as company phones, company vehicles, and steel-toed boots. Or REXEL could have reimbursed employees for the costs of their cellular phones, mileage, travel, medical testing, and boot expenses. Instead, REXEL passed these operating costs off onto Mr. Torres and other aggrieved employees. At all relevant times, Mr. Torres did not earn at least two (2) times the minimum wage.

Thus, REXEL had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802. Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**Violation of California Labor Code §§ 6401 and 6403 – Failure to Provide Safety Devices and Safeguards**

California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy. California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

REXEL, on a company-wide basis, failed to provide other aggrieved employees with personal protective equipment, such as steel-toed boots, to keep them safe in the workplace. Despite the fact that REXEL required employees to wear certain personal protective equipment, including steel-toed boots, REXEL failed to provide such reasonably necessary equipment to other aggrieved employees to keep them safe.

REXEL's failure to provide other aggrieved employees with safety devices and safeguards for the workplace violates Labor Code sections 6401 and 6403. Other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." REXEL, at all relevant times, was an employer or person acting on behalf of an employer(s) who

violated Mr. Torres's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Mr. Torres seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Mr. Torres, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for himself, all other aggrieved employees, and the State of California against REXEL for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

Therefore, on behalf of all aggrieved employees, Mr. Torres seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter. If you have any questions, please contact me at the phone number or address below:

> Anthony Castillo
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Anthony Castillo

Copy: REXEL USA, INC. (via U.S. Certified Mail)

16



PITNEY BOWES

$007.930

02 1P $

0000466553

MAILED FROM ZIP CODE 90067

UNITED STATES POSTAGE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

9590 9402 5816 0034 8461 82

2. Article Number (Transfer from service label)

7020 1290 0000 3958 7962

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

CERTIFIED MAIL

7020 1290 0000 3958 7962

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

one
LAW APC
ry Park East, Ste 1000
s, CA 90067

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)   $ 2.80
☐ Return Receipt (electronic)   $
☐ Certified Mail Restricted Delivery   $
☐ Adult Signature Required   $
☐ Adult Signature Restricted Delivery   $

Postmark
Here

Torres v. Rexel
USA, Inc.

Postage
$ 1.63

Total Postage and Fees
$ 7.93

Sent To
REXEL USA, INC.
Street and Apt. No., or PO Box No.
14951 DALLAS PARKWAY
City, State, ZIP+4®
DALLAS TX 75254

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

**Capstone**
LAW APC

1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ANTHONY CASTILLO
310.712.8169 Direct
Anthony.Castillo@capstonelawyers.com

January 15, 2021

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/310)

Subject:     *Gerardo Torres v. Rexel USA, Inc.*
             *LWDA-CM-811757-20 – AMENDED NOTICE*

Dear PAGA Administrator:

This office represents Gerardo Torres in connection with his claims under the California Labor Code. Mr. Torres was an employee of REXEL USA, INC. ("REXEL"). We previously provided notice of Mr. Torres's claims to the California Labor and Workforce Development Agency ("LWDA") on November 5, 2020, and submitted the applicable filing fee pursuant to Labor Code section 2699.3(a)(1)(B). This amended notice supplements Mr. Torres's prior LWDA notice and is intended to clarify the facts and theories supporting his claims.

The employer may be contacted directly at the address below:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

Mr. Torres intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Mr. Torres seeks relief on behalf of himself, the State of California, and other persons who are or were employed by REXEL as a non-exempt, hourly paid employee in California at REXEL's retail, warehouse, and/or distribution center locations and who received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

REXEL employed Mr. Torres as an hourly paid, non-exempt employee from approximately June 2011 to July 2020. Mr. Torres worked for REXEL as a Warehouse Driver, Counter Sales Representative, and Inside Sales Representative at its store location in Modesto, California. During his employment, Mr. Torres typically worked eight (8) hours or more per day, five (5) days per week, from 6:00 a.m. to 3:30 p.m. At the time Mr. Torres's employment ended, he earned approximately $22.00 per hour, plus commissions. His job duties included, without limitation, conducting inventory, creating reports, assisting customers, making sales calls, managing client accounts, transferring supplies from other store locations, and making deliveries, as needed.

REXEL committed one or more of the following Labor Code violations against Mr. Torres, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

**REXEL's Company-Wide and Uniform Payroll and HR Practices**

REXEL USA, INC. is a Delaware corporation and is a global electrical supply and services company, serving industrial, residential, and commercial markets.  Upon information and belief, REXEL maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Dallas, Texas, for all non-exempt, hourly paid employees working for REXEL in California, including Mr. Torres and other aggrieved employees.  At all relevant times, REXEL issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Mr. Torres and other aggrieved employees, regardless of its location or position.

Upon information and belief, REXEL maintains a centralized Payroll department at its corporate headquarters in Dallas, Texas, which processes payroll for all non-exempt, hourly paid employees working for REXEL in California, including Mr. Torres and other aggrieved employees.  Further, REXEL issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Mr. Torres and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended.  In other words, REXEL utilized the same methods and formulas when calculating wages due to Mr. Torres and other aggrieved employees in California.

**Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime**

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.  The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

REXEL willfully failed to pay all overtime wages owed to Mr. Torres and other aggrieved employees. During the relevant time period, Mr. Torres and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant period, REXEL had a company-wide policy and/or practice of improperly rounding employees' clock-in and clock-out duration times in their timekeeping system to the nearest quarter (0.25) of an hour.  REXEL's rounding policy resulted in the failure to compensate Mr. Torres and

---

[1] These facts, theories, and claims are based on Mr. Torres's experience and counsel's review of those records currently available relating to Mr. Torres's employment.  Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations).  Thus, Mr. Torres reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

other aggrieved employees fully for all hours worked, causing Mr. Torres and other aggrieved employees to not be paid overtime wages for all of the overtime hours they actually worked.  REXEL's policy of rounding was unfair and has, over time, resulted in the underpayment of wages to Mr. Torres and other aggrieved employees.  To the extent REXEL's rounding policy has taken away time worked that was eligible for overtime, Mr. Torres and other aggrieved employees were denied overtime pay for all hours worked.

Second, REXEL had a company-wide practice and/or policy of requiring Mr. Torres and other aggrieved employees to perform work-related tasks while off-the-clock, but prevented them from accounting for and recording this time in the timekeeping system.  For example, approximately twice per month, Mr. Torres and other aggrieved employees were asked to pick up materials from other store locations on their way into work, which could take 15-20 minutes to complete, but were prevented from clocking in until their scheduled shift start-times.  Mr. Torres and other aggrieved employees would also report to work prior to the start of their scheduled shifts to open the stores for customers, but were not permitted clock in until their scheduled shift start-times.  Additionally, approximately 3-5 times per week, Mr. Torres and other aggrieved employees were asked to make deliveries to customers or drop off materials to other store locations on their way home, after they had clocked out for their scheduled shifts.  Other aggrieved employees were also required to respond, on their personal cellular phones, to communications from REXEL's management regarding work-related matters and assignments after their scheduled shifts.  These off-the-clock conversations could last up to five (5) minutes per instance.  Thus, REXEL failed to track all hours Mr. Torres and other aggrieved employees spent working before clocking in and/or after clocking out, and Mr. Torres and other aggrieved employees received no compensation for this time.

Third, during the relevant period, REXEL had, and continues to have, a company-wide policy and/or practice of understaffing its worksites while assigning heavy workloads, resulting in a failure to provide Mr. Torres and other aggrieved employees with adequate meal period coverage.  As a result of this lack of meal period coverage, Mr. Torres and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period.  For example, Mr. Torres was required to perform his duties, such as taking inventory, completing sales, or assisting customers, while clocked out for his unpaid meal periods.  Thus, Mr. Torres and other aggrieved employees missed meal periods to complete their assigned workloads.  REXEL did not pay Mr. Torres and other aggrieved employees for the time they continued to perform tasks during meal periods.

Additionally, REXEL, on a company-wide basis, had a practice of failing to schedule meal periods, which, in conjunction with assigning heavy workloads, further caused Mr. Torres and other aggrieved employees to not be relieved of their duties for compliant meal periods.  Thus, Mr. Torres and other aggrieved employees missed meal periods to complete their assigned workloads.  REXEL did not pay Mr. Torres and other aggrieved employees for the time they continued to perform tasks during meal periods.  Further, on information and belief, because REXEL frowned upon employees accruing meal period penalties, when Mr. Torres and other aggrieved employees failed to clock themselves out at designated meal period start times, they were subject to REXEL altering their time records and deducting time for meal periods that were not taken.  Alternatively, REXEL's supervisors adjusted employee time records to show compliant meal periods, even if none were taken.  Consequently, Mr. Torres and other aggrieved employees performed work during meal periods for which they were not paid.

REXEL knew or should have known that as a result of these company-wide practices and/or policies, Mr. Torres and other aggrieved employees were performing assigned duties during their meal periods and performing work off-the-clock before or after their shifts, and were suffered or permitted to perform work for which they were not paid.  Because Mr. Torres and other aggrieved employees worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for

overtime premium pay. Therefore, Mr. Torres and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

Furthermore, on information and belief, REXEL did not pay Mr. Torres and other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, REXEL paid Mr. Torres and other aggrieved employees incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration. However, in violation of the California Labor Code, REXEL failed to incorporate all compensation, including incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when Mr. Torres and other aggrieved employees worked overtime and received these other forms of pay, REXEL failed to pay all overtime wages by paying a lower overtime rate than required.

For example, REXEL paid Mr. Torres and other aggrieved employees nondiscretionary bonuses and/or commission payments related to sales made from the accounts they managed or sales for their retail locations. REXEL also paid Mr. Torres and other aggrieved employees fringe benefits pay. On information and belief, some of these nondiscretionary bonuses and/or commission payments were listed on Mr. Torres's and other aggrieved employees' wage statements as "Commissions ISM" or "Cm1 O/S Com," and fringe benefit payments were listed on Mr. Torres's and other aggrieved employees' wage statements as "Frn Fringe." During pay periods that Mr. Torres and other aggrieved employees were paid overtime wages, REXEL did not always incorporate the nondiscretionary bonuses, commission pay, incentive pay, and/or fringe benefit pay into Mr. Torres's and other aggrieved employees' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked. Specifically, REXEL paid Mr. Torres and other aggrieved employees 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay. REXEL's failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Mr. Torres and other aggrieved employees on a company-wide basis.

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined in Wage Order No. 7 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

During the relevant time period, as stated above, REXEL had a company-wide policy and/or practice of rounding Mr. Torres's and other aggrieved employees' hourly clock-in and clock-out duration times in its timekeeping system to the nearest quarter hour, resulting in the failure to compensate them for all hours worked. Furthermore, as set forth above, Mr. Torres and other aggrieved employees were required to perform duties off-the-clock before and after their scheduled shifts, such as responding to phone calls from supervisors, making deliveries, and/or picking up supplies from other locations, time for which they were not paid. As also stated above, due to REXEL's policy and/or practice of understaffing its locations while assigning heavy workloads, Mr. Torres and other aggrieved employees were forced to forgo meal periods and instead continue to perform their duties during unpaid meal periods.

Also, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts. Other aggrieved employees followed REXEL's instructions and completed the required health screenings before REXEL permitted them to clock in for their shifts. Even though REXEL required these health screenings, REXEL did not provide other aggrieved employees a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory health screenings and temperature checks.

Furthermore, REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations. At all times, REXEL was in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. REXEL gave Mr. Torres strict instructions to obtain COVID-19 testing, and Mr. Torres underwent the testing for the sole benefit of REXEL. Mr. Torres followed REXEL's instructions and spent 20-30 minutes traveling to and from a medical facility to undergo the requisite testing. As a further example, REXEL gave other aggrieved employees strict instructions to obtain drug testing and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL. Other aggrieved employees were required to travel in their own personal vehicles and spend time undergoing REXEL's mandatory drug tests and/or physical examinations. However, REXEL did not compensate Mr. Torres and other aggrieved employees for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing, COVID-19 testing, and/or physical examinations.

Thus, REXEL did not pay at least minimum wages for off-the-clock hours that qualified for overtime premium payment. Also, to the extent that these off-the-clock hours did not qualify for overtime premium payment, REXEL did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, and 1197.1. Accordingly, REXEL regularly failed to pay at least minimum wages to Mr. Torres and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1 and 1198.

Mr. Torres and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a), 516, 1198 and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may

be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

As stated, REXEL, on a company-wide basis, has systematically discouraged and impeded Mr. Torres and other aggrieved employees from taking meal periods by failing to schedule meal periods, while assigning heavy workloads, even though it is aware and knows that employees are entitled to such meal periods. As a result of this uniform failure to schedule meal periods, Mr. Torres and other aggrieved employees have not been provided timely, uninterrupted 30-minute meal periods during their shifts in which they were entitled to receive a meal period. As a result of REXEL's practices and/or policies, Mr. Torres and other aggrieved employees had to work through part or all of their meal periods and wait extended periods of time before taking meal periods.

Furthermore, on information and belief, because REXEL frowned upon employees accruing meal period penalties, REXEL's management would adjust Mr. Torres's and other aggrieved employees' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by REXEL. However, Mr. Torres and other aggrieved employees worked through meal periods because there were not enough employees on duty to handle the heavy workload and tend to REXEL's customers.

As a result of REXEL's company-wide practices and/or policies, Mr. Torres and other aggrieved employees would be forced to work in excess of five (5) hours before taking a meal period and, at times, had to forgo their meal periods altogether. For example, during his employment, Mr. Torres would miss his meal periods once per month due to the heavy workload and was instructed by management to clock out and continue working. Moreover, when Mr. Torres was provided with a meal period, he frequently received them after he worked five (5) hours. During the month of February 2020, REXEL did not provide Mr. Torres with a meal period until he worked in excess of five (5) hours on every shift he was eligible to receive a meal period that month. As a further example, other aggrieved employees were asked by management to make deliveries during their meal periods and were advised to eat their meals in the company vehicles while driving to delivery destinations.

Moreover, REXEL did not provide Mr. Torres and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. During his employment, Mr. Torres worked shifts in excess of ten (10) hours or more per day, but was not provided a second 30-minute meal period. Mr. Torres and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

At all times herein mentioned, REXEL knew or should have known that, as a result of these policies, Mr. Torres and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods. REXEL further knew or should have known that it did not pay Mr. Torres and other aggrieved employees meal period premium wages when meal periods were late, interrupted, shortened, or missed because REXEL adjusted employee time records to reflect compliant meal periods, even if none were taken.

Moreover, REXEL engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of REXEL's practices and/or policies, Mr. Torres and other aggrieved employees have not received premium pay for all missed, late, and interrupted meal periods. Alternatively, to the extent that REXEL did pay Mr. Torres and other aggrieved employees premium pay for missed, late, and interrupted meal periods, REXEL did not pay Mr. Torres and other aggrieved employees at the correct rate of pay for premium wages because REXEL systematically failed to include all forms of compensation, such as incentive pay, commission pay,

nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198. Mr. Torres and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods</u>**

California Labor Code sections 226.7, 516, 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, REXEL regularly failed to authorize and permit Mr. Torres and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, REXEL's company-wide practices, including assigning heavy workloads, prevented Mr. Torres and other aggrieved employees from being relieved of all duty to take their rest periods. For example, REXEL actively discouraged Mr. Torres from taking rest periods by telling him that his rest periods were included in his 60-minute meal period. Additionally, REXEL failed to schedule rest periods, which, coupled with REXEL's failure to provide adequate rest period coverage, further led to Mr. Torres and other aggrieved employees not being authorized and permitted to take compliant rest periods. As a result of REXEL's practices and policies, Mr. Torres and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled. For example, Mr. Torres never received a rest period throughout his employment due to the lack of coverage and REXEL's failure to schedule rest periods.

Furthermore, upon information and belief, during the relevant time period, REXEL maintained and implemented a company-wide on-premises rest period policy, which mandated that Mr. Torres and other aggrieved employees remain on the work premises during their rest periods. Upon information and belief, REXEL's company-wide on-premises rest period policy prevented Mr. Torres and other aggrieved employees from being relieved of all duties for rest periods and caused them to perform work during rest periods.

REXEL also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted. Because of this practice and/or policy, Mr. Torres and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that REXEL did pay Mr. Torres and other aggrieved employees

one (1) additional hour of premium pay for missed rest periods, REXEL did not pay Mr. Torres and other aggrieved employees at the correct rate of pay for premium wages because REXEL failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198. Mr. Torres and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### **Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. REXEL has not provided Mr. Torres and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, REXEL has knowingly and intentionally provided Mr. Torres and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, REXEL issued uniform wage statements to Mr. Torres and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; the name and address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate. Specifically, REXEL violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(7), 226(a)(8), and 226(a)(9).

First, because REXEL did not record the time Mr. Torres and other aggrieved employees spent working off the clock, improperly rounded their total hours worked, and deducted time from their records for meal periods that were missed (and therefore time for which they should have been paid), REXEL did not list the correct amount of gross wages and net wages earned by Mr. Torres and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, REXEL failed to accurately list the total number of hours worked by Mr. Torres and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Second, because REXEL did not calculate Mr. Torres's and other aggrieved employees' regular rate of pay correctly for purposes of paying overtime and paid sick leave, REXEL did not list the correct amount of gross wages in compliance with section 226(a)(1). For the same reason, REXEL also failed to list the correct amount of net wages in violation of section 226(a)(5). REXEL also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9).

8

Third, REXEL failed to list the last four digits of Mr. Torres's and other aggrieved employees' social security number or an employee identification number other than a social security number on wage statements, in violation of section 226(a)(7).  For example, REXEL systematically, and on a company-wide basis, failed to list a social security number or employee identification number on Mr. Torres's and other aggrieved employees' final wage statements, including Mr. Torres's wage statement dated July 23, 2020.  *See example paystub below.*

Fourth, and separate from these violations, REXEL issued uniform wage statements to Mr. Torres and other aggrieved employees that failed to correctly list the correct name and address of the legal entity of the actual employer in violation of 226(a)(8).  The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, to obtain unemployment benefits, etc.  During the relevant time period, REXEL systematically, and on a company-wide basis, issued wage statements to Mr. Torres and other aggrieved employees that fail to list the employing entity's name and address.  For example, REXEL uniformly failed to list the employing entity's name and address on Mr. Torres's and other aggrieved employees' final wage statements, including Mr. Torres's wage statement dated July 23, 2020.  *See example paystub below.*



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective

plants or establishments. . . ."  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), REXEL willfully failed to maintain accurate payroll records for Mr. Torres and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and improperly rounding Mr. Torres's and other aggrieved employees' clock-in and clock-out duration times.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, REXEL failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Mr. Torres and other aggrieved employees, in violation of section 1198.  Also, as stated, REXEL engaged in a company-wide practice and/or policy of falsifying Mr. Torres's and other aggrieved employees' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Mr. Torres and other aggrieved employees.  Furthermore, in light of REXEL's failure to provide Mr. Torres and other aggrieved employees with second 30-minute meal periods to which they were entitled, REXEL kept no records of meal start and end times for second meal periods.

Because REXEL failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Mr. Torres and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Mr. Torres and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment</u>**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, REXEL failed to pay Mr. Torres and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premium wages, within any time period specified by California Labor Code section 204.

10

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

REXEL willfully failed to pay Mr. Torres and other aggrieved employees who are no longer employed by REXEL all their earned wages, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving REXEL's employ in violation of California Labor Code sections 201, 202, and 203.

Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing**

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts. As stated, other aggrieved employees followed REXEL's instructions and completed the required health screenings before REXEL permitted them to clock in for their shifts. Even though REXEL required these health screenings, REXEL did not compensate other aggrieved employees for the time they spent undergoing the mandatory health screenings and temperature checks.

Moreover, at all times relevant herein, REXEL implemented, on a company-wide basis, an employer-imposed requirement that Mr. Torres and other aggrieved employees undergo mandatory drug testing, COVID-19 testing, and/or physical examinations, but required them to do so at their own expense. As stated, REXEL had a company-wide policy requiring that all employees travel to a specified medical facility on their own time and using their own personal vehicles to undergo drug testing, COVID-19 testing, and/or physical examinations. At all times, REXEL was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider/facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. For example, REXEL gave Mr. Torres strict instructions to obtain COVID-19 testing, and Mr. Torres followed REXEL's instructions and spent 20-30 minutes traveling to and from a medical facility to undergo the requisite testing for the sole benefit of REXEL, and paid $250.00 out-of-pocket for the COVID-19 test taken in March 2020.

However, REXEL did not compensate Mr. Torres and other aggrieved employees for the time they spent traveling to and from their drug testing, COVID-19 testing, and/or physical examinations, or for the time

11

they spent undergoing the health screenings, drug testing, COVID-19 testing, and/or physical examinations. Moreover, REXEL failed to reimburse Mr. Torres and other aggrieved employees for the out-of-pocket costs for taking some COVID-19 tests. REXEL's policy and/or not paying for all costs Mr. Torres and other aggrieved employees incurred undertaking mandatory health screenings, drug testing, COVID-19 testing, and/or physical examinations is in violation of California Labor Code section 222.5.

Mr. Torres and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**Violation of California Labor Code § 246 – Unpaid Sick Leave**

At all relevant times herein, California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Further, Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

During the relevant time period, REXEL did not pay Mr. Torres and other aggrieved employees the correct sick leave rates of pay. As stated, in addition to an hourly wage, REXEL paid Mr. Torres and other aggrieved employees incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration. However, in violation of the California Labor Code, REXEL failed to incorporate all remunerations, including incentive pay, commission pay, nondiscretionary bonuses, and/or fringe benefit pay, into the calculation of the regular rate of pay for purposes of calculating the sick leave rate of pay. Therefore, during times when Mr. Torres and other aggrieved employees took sick leave and received these other forms of pay, REXEL failed to pay all sick leave benefits by paying a lower sick leave rate than required. Specifically, REXEL paid Mr. Torres and other aggrieved employees sick leave based on their hourly rate of pay instead of their regular rate of pay.

For example, during the pay period ending June 14, 2020, Mr. Torres took 1.72 hours of sick leave and earned $722.61 in commission pay during the same pay period. However, REXEL paid Mr. Torres's sick leave rate based on his hourly rate of $19.80 instead of his regular rate of pay.

REXEL's failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to Mr. Torres and other aggrieved employees on a company-wide basis in violation of Labor Code 246(l). Mr. Torres and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 248.5 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 14(B) – Failure to Provide Suitable Seating**

California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is

12

unlawful." California Code of Regulations, Title 8, section 11070(14)(B) provides that "[w]hen employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

The IWC states that section 14(B) applies during "lulls in operation" when an employee, while still on the job, is not then actively engaged in any duties. *Kilby v. CVS Pharmacy, Inc.*, 368 P.3d 554, 565 (Cal. 2016), citing IWC, 1976 Wage Orders, Summary of Basic Provisions, Seats. When taken together, an employee is entitled to a seat under section 14(A) if his or her actual tasks at a discrete location make seated work feasible, while working there. *Id.* However, if other job duties take the employee to a different location where he or she must perform tasks requiring standing, the employee would be entitled to a seat under section 14(B) during "lulls in operation." *Id.*

REXEL's California warehouse locations are generally similar in their layout and design and there was, and continues to be, space near their work areas (with reasonable or no modification to these work areas) to allow for the presence and use of a seat or stool by other aggrieved employees during lulls in operation. REXEL could provide other aggrieved employees with a seat or stool in its work areas, but instead denies employees seating and forces other aggrieved employees to stand throughout the day.

REXEL did not provide other aggrieved employees with seats or stools in reasonable proximity to their work areas to allow them to use seats when it would not interfere with the performance of their duties for times when they were not engaged in active duties that require standing. In other words, to the extent other aggrieved employees engaged in duties in which the nature of the work required standing, REXEL denied them the use of seats nearby during lulls in their work duties. Moreover, REXEL did not inform other aggrieved employees of their rights to a seat or stool under California law.

As a result of REXEL's company-wide policy and/or practice of prohibiting employees from sitting at any time, even when they were not engaged in active duties requiring standing, and company-wide failure to provide seats in reasonable proximity to their work areas, other aggrieved employees were forced to stand during shifts and denied seats. REXEL's failure to provide suitable seating to other aggrieved employees violates California Labor Code section 1198 and IWC Wage Order 7-2001, Section 14(B).

Other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, and seek injunctive relief to bring REXEL into compliance with California's seating requirements, pursuant to Labor Code sections 1194.5 and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 2802 – Unreimbursed Business Expenses

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, REXEL had a company-wide policy of requiring Mr. Torres and other aggrieved employees to utilize their own personal cellular phones and cellular data to carry out their

job duties, but REXEL failed to reimburse them for the costs of their work-related cellular phone expenses. For example, Mr. Torres and other aggrieved employees were required to use their personal cellular phones to complete their work-related tasks, such as discussing ongoing assignments with REXEL's managers. As a further example, Mr. Torres and other aggrieved employees were also required to use their cellular data/GPS to assist them with their driving routes. Although REXEL required Mr. Torres and other aggrieved employees to utilize their personal cellular phones to carry out their work-related responsibilities, REXEL failed to fully reimburse them for this cost.

Second, REXEL had a company-wide policy of requiring Mr. Torres and other aggrieved employees to travel in their own personal vehicles to obtain mandatory drug testing, COVID-19 testing, and/or physical examinations, but did not reimburse them for their travel expenses, including mileage. REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations. At all times, REXEL was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. For example, REXEL required Mr. Torres to undergo COVID-19 testing in March 2020 and again in June 2020 before he could return to work. Mr. Torres traveled 10 miles roundtrip in his personal vehicle from REXEL's Modesto store location to the Kaiser Permanente medical facility in Modesto, California, and underwent REXEL's required testing for COVID-19, but was not reimbursed for his mileage to and from the medical facility. Moreover, Mr. Torres paid $250.00 out of pocket for his COVID-19 test in March 2020, and was not reimbursed for this expense.

Third, REXEL had a company-wide policy of requiring Mr. Torres and other aggrieved employees to utilize their own personal vehicles for work purposes, such as making deliveries to customers and transporting materials between store locations, but failed to reimburse them for all costs of travel, including mileage. For example, Mr. Torres drove approximately 100 miles per week making deliveries to customers and driving to and from REXEL's store locations, but was never reimbursed for his mileage. Although REXEL required Mr. Torres and other aggrieved employees to utilize their own vehicles to complete these tasks as part of their work duties, REXEL did not reimburse them fully for all of their travel expenses.

Fourth, REXEL, on a company-wide basis, mandated that other aggrieved employees purchase special safety shoes such as steel-toed boots, which they were required to wear while at work. Other aggrieved employees purchased steel-toed boots to wear inside REXEL's facilities, but were not reimbursed fully for these costs.

REXEL could have provided Mr. Torres and other aggrieved employees with the actual tools for use on the job, such as company phones, company vehicles, and steel-toed boots. Or REXEL could have reimbursed employees for the costs of their cellular phones, mileage, travel, medical testing, and boot expenses. Instead, REXEL passed these operating costs off onto Mr. Torres and other aggrieved employees. At all relevant times, Mr. Torres did not earn at least two (2) times the minimum wage.

Thus, REXEL had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802. Mr. Torres and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**Violation of California Labor Code §§ 6401 and 6403 – Failure to Provide Safety Devices and Safeguards**

California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy. California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

REXEL, on a company-wide basis, failed to provide other aggrieved employees with personal protective equipment, such as steel-toed boots, to keep them safe in the workplace. Despite the fact that REXEL required employees to wear certain personal protective equipment, including steel-toed boots, REXEL failed to provide such reasonably necessary equipment to other aggrieved employees to keep them safe.

REXEL's failure to provide other aggrieved employees with safety devices and safeguards for the workplace violates Labor Code sections 6401 and 6403. Other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." REXEL, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Mr. Torres's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Mr. Torres seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Mr. Torres, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for himself, all other aggrieved employees, and the State of California against REXEL for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

Therefore, on behalf of all aggrieved employees, Mr. Torres seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

15

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Anthony Castillo
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Anthony Castillo

Copy: REXEL USA, INC. (via U.S. Certified Mail)

16



$007.92

02 1P
0000060553 JAN 15 20
MAILED FROM ZIP CODE 9000

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254



9590 9402 1512 5362 2721 76

2. Article Number *(Transfer from service label)*

7020 1290 0000 3958 7313

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

CERTIFIED MAIL

7020 1290 0000 3958 7313

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

... one
...AW APC
...y Park East, Ste 1000
...CA 90067

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

7020 1290 0000 3958 7313

Certified Mail Fee
$ 3.50

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)      $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $

Postage
$ 1.63

Total Postage and Fees
$ 7.93

Postmark
Here

Torres v. Rexel
USA, Inc.

Sent To
REXEL USA, INC.
Street and Apt. No., or PO Box No.
14951 DALLAS PARKWAY
City, State, ZIP+4®
DALLAS TX 75254

PS Form **3800**, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

Exhibit 2

# Capstone
LAW APC

1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ANTHONY CASTILLO
310.712.8169 Direct
Anthony.Castillo@capstonelawyers.com

November 5, 2020

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/295)

Subject:      *Tawni Vandagriff v. Rexel USA, Inc.*

Dear PAGA Administrator:

This office represents Tawni Vandagriff in connection with her claims under the California Labor
Code. Ms. Vandagriff was an employee of REXEL USA, INC. ("REXEL").

The employer may be contacted directly at the address below:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

Ms. Vandagriff intends to seek civil penalties, attorney's fees, costs, and other available relief for
violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the
Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Vandagriff seeks relief on behalf
of herself, the State of California, and other persons who are or were employed by REXEL as a non-
exempt, hourly paid employee in California at REXEL's retail, warehouse, and/or distribution center
locations and who received at least one wage statement ("aggrieved employees"). This letter is sent
in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

REXEL employed Ms. Vandagriff as an hourly paid, non-exempt Warehouse Associate from
approximately July 2017 to July 2018 at its warehouse location in Patterson, California, and as a
Driver from approximately July 2018 to August 2020 at REXEL's store location in Modesto,
California. During her employment, Ms. Vandagriff typically worked eight (8) to ten (10) hours or
more per day, five (5) days per week. By the end of Ms. Vandagriff's employment with REXEL, she
earned approximately $17.00 per hour. As a Warehouse Associate, her primary job duties as a
included, without limitation, assisting customers with product pick-ups, locating products for
shipments, wrapping shipment pallets, and arranging for pallet deliveries. As a Driver, Ms.
Vandagriff's primary job duties included, without limitation, delivering products to job sites,
providing customer assistance, and documenting and logging deliveries.

1

REXEL committed one or more of the following Labor Code violations against Ms. Vandagriff, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c):[1]

## REXEL's Company-Wide and Uniform Payroll and HR Practices

REXEL USA, INC. is a Delaware corporation and is a global electrical supply and services company, serving industrial, residential, and commercial markets.  Upon information and belief, REXEL maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Dallas, Texas, for all non-exempt, hourly paid employees working for REXEL in California, including Ms. Vandagriff and other aggrieved employees.  At all relevant times, REXEL issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Ms. Vandagriff and other aggrieved employees, regardless of its location or position.

Upon information and belief, REXEL maintains a centralized Payroll department at its corporate headquarters in Dallas, Texas, which processes payroll for all non-exempt, hourly paid employees working for REXEL in California, including Ms. Vandagriff and other aggrieved employees. Further, REXEL issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Ms. Vandagriff and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended.  In other words, REXEL utilized the same methods and formulas when calculating wages due to Ms. Vandagriff and other aggrieved employees in California.

## Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.  The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

REXEL willfully failed to pay all overtime wages owed to Ms. Vandagriff and other aggrieved employees.  During the relevant time period, Ms. Vandagriff and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in

---

[1] These facts, theories, and claims are based on Ms. Vandagriff's experience and counsel's review of those records currently available relating to Ms. Vandagriff's employment.  Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations).  Thus, Ms. Vandagriff reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant period, REXEL had a company-wide policy and/or practice of improperly rounding employees' clock-in and clock-out duration times in their timekeeping system to the nearest quarter (0.25) of an hour. REXEL's rounding policy resulted in the failure to compensate Ms. Vandagriff and other aggrieved employees fully for all hours worked, causing Ms. Vandagriff and other aggrieved employees to not be paid overtime wages for all of the overtime hours they actually worked. REXEL's policy of rounding was unfair and has, over time, resulted in the underpayment of wages to Ms. Vandagriff and other aggrieved employees. To the extent REXEL's rounding policy has taken away time worked that was eligible for overtime, Ms. Vandagriff and other aggrieved employees were denied overtime pay for all hours worked.

Second, REXEL had a company-wide practice and/or policy of requiring Ms. Vandagriff and other aggrieved employees to perform work-related tasks while off-the-clock, but prevented them from accounting for and recording this time in the timekeeping system. For example, Ms. Vandagriff and other aggrieved employees were required to respond to communications from REXEL's management while off-the-clock regarding work-related matters and assignments on their personal cellular phones after their scheduled shifts. Other aggrieved employees were also asked to pick up materials from other store locations on their way into work, or report to work prior to the start of their scheduled shifts to open the stores for customers, but were prevented from clocking in until their scheduled shift start-times. Additionally, other aggrieved employees were asked to make deliveries to customers or drop off materials to other store locations on their way home, after they had clocked out for their scheduled shifts. Thus, REXEL failed to track all hours Ms. Vandagriff and other aggrieved employees spent working before clocking in and/or after clocking out, and Ms. Vandagriff and other aggrieved employees received no compensation for this time.

Third, during the relevant period, REXEL had, and continues to have, a company-wide policy and/or practice of understaffing its worksites while assigning heavy workloads, resulting in a failure to provide Ms. Vandagriff and other aggrieved employees with adequate meal period coverage. As a result of this lack of meal period coverage, Ms. Vandagriff and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period. For example, Ms. Vandagriff was required to perform her duties, such as picking orders, wrapping pallets, assisting customers, or making deliveries, while clocked out for her unpaid meal periods. Thus, Ms. Vandagriff and other aggrieved employees missed meal periods to complete their assigned workloads. REXEL did not pay Ms. Vandagriff and other aggrieved employees for the time they continued to perform tasks during meal periods.

Additionally, REXEL, on a company-wide basis, had a practice of failing to schedule meal periods, which, in conjunction with assigning heavy workloads, further caused Ms. Vandagriff and other aggrieved employees to not be relieved of their duties for compliant meal periods. Thus, Ms. Vandagriff and other aggrieved employees missed meal periods to complete their assigned workloads. REXEL did not pay Ms. Vandagriff and other aggrieved employees for the time they continued to perform tasks during meal periods. Further, on information and belief, because REXEL frowned upon employees accruing meal period penalties, when Ms. Vandagriff and other aggrieved employees failed to clock themselves out at designated meal period start times, they were subject to REXEL altering their time records and deducting time for meal periods that were not taken. Alternatively, REXEL's supervisors adjusted employee time records to show compliant meal

3

periods, even if none were taken.  Consequently, Ms. Vandagriff and other aggrieved employees performed work during meal periods for which they were not paid.

REXEL knew or should have known that as a result of these company-wide practices and/or policies, Ms. Vandagriff and other aggrieved employees were performing assigned duties during their meal periods and performing work off-the-clock before or after their shifts, and were suffered or permitted to perform work for which they were not paid.  Because Ms. Vandagriff and other aggrieved employees worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.  Therefore, Ms. Vandagriff and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

Furthermore, on information and belief, REXEL did not pay Ms. Vandagriff and other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated.  In addition to an hourly wage, REXEL paid Ms. Vandagriff and other aggrieved employees incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration.  However, in violation of the California Labor Code, REXEL failed to incorporate all compensation, including incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate.  Therefore, during times when Ms. Vandagriff and other aggrieved employees worked overtime and received these other forms of pay, REXEL failed to pay all overtime wages by paying a lower overtime rate than required.

Specifically, REXEL paid Ms. Vandagriff and other aggrieved employees fringe benefits pay.  REXEL also paid other aggrieved employees nondiscretionary bonuses and/or commission payments related to sales made from the accounts they managed or sales for their retail locations.  On information and belief, fringe benefit payments were listed on Ms. Vandagriff's and other aggrieved employees' wage statements as "Frn Fringe," and some of these nondiscretionary bonuses and/or commission payments were listed on other aggrieved employees' wage statements as "Commissions ISM" or "Cm1 O/S Com."  During pay periods that Ms. Vandagriff and other aggrieved employees were paid overtime wages, REXEL did not always incorporate the nondiscretionary bonuses, commission pay, incentive pay, and/or fringe benefit pay into Ms. Vandagriff's and other aggrieved employees' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked.  Specifically, REXEL paid Ms. Vandagriff and other aggrieved employees 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay.  REXEL's failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Ms. Vandagriff and other aggrieved employees on a company-wide basis.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC.  The payment of a lesser wage than the minimum so fixed is unlawful.  Compensable work time is defined in Wage Order No. 7 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is

4

suffered or permitted to work, whether or not required to do so."  Cal. Code. Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

During the relevant time period, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that Ms. Vandagriff and other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts.  Ms. Vandagriff and other aggrieved employees followed REXEL's instructions and completed the required health screenings before being permitted to clock in for their shifts.  Even though REXEL required these health screenings, REXEL did not provide Ms. Vandagriff and other aggrieved employees a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory health screenings and temperature checks.

Also, as stated above, REXEL had a company-wide policy and/or practice of rounding Ms. Vandagriff's and other aggrieved employees' hourly clock-in and clock-out duration times in its timekeeping system to the nearest quarter hour, resulting in the failure to compensate them for all hours worked.  Furthermore, as set forth above, Ms. Vandagriff and other aggrieved employees were required to perform duties off-the-clock before and after their scheduled shifts, performing tasks such as making deliveries and/or picking up supplies from other locations, time for which they were not paid.  As also stated above, due to REXEL's policy and/or practice of understaffing its locations while assigning heavy workloads, Ms. Vandagriff and other aggrieved employees were forced to forgo meal periods and instead continue to perform their duties during unpaid meal periods.

Furthermore, REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations.  At all times, REXEL was in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  REXEL gave other aggrieved employees strict instructions to obtain drug testing, COVID-19 testing, and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL.  Other aggrieved employees were required to travel in their own personal vehicles and spend time undergoing REXEL's mandatory drug tests, COVID-19 testing, and/or physical examinations. However, REXEL did not compensate other aggrieved employees for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing, COVID-19 testing, and/or physical examinations.

Thus, REXEL did not pay at least minimum wages for off-the-clock hours that qualified for overtime premium payment.  Also, to the extent that these off-the-clock hours did not qualify for overtime premium payment, REXEL did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, and 1197.1.  Accordingly, REXEL regularly failed to pay at least minimum wages to Ms. Vandagriff and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1 and 1198.

Ms. Vandagriff and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a), 516, 1198 and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (Cal. 2012).  Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

As stated, REXEL, on a company-wide basis, has systematically discouraged and impeded Ms. Vandagriff and other aggrieved employees from taking meal periods by failing to schedule meal periods, while assigning heavy workloads, even though it is aware and knows that employees are entitled to such meal periods.  As a result of this uniform failure to schedule meal periods, Ms. Vandagriff and other aggrieved employees have not been provided timely, uninterrupted 30-minute meal periods during their shifts in which they were entitled to receive a meal period.  As a result of REXEL's practices and/or policies, Ms. Vandagriff and other aggrieved employees had to work through part or all of their meal periods and wait extended periods of time before taking meal periods.

Furthermore, on information and belief, because REXEL frowned upon employees accruing meal period penalties, REXEL's management would adjust Ms. Vandagriff's and other aggrieved employees' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by REXEL.  However, Ms. Vandagriff and other aggrieved employees worked through meal periods because there were not enough employees on duty to handle the heavy workload and tend to REXEL's customers.

As a result of REXEL's company-wide practices and/or policies, Ms. Vandagriff and other aggrieved employees would be forced to work in excess of five (5) hours before taking a meal period and, at times, had to forgo their meal periods altogether.  For example, Ms. Vandagriff was asked by management to make a delivery during her meal period and was advised to eat her meal in the company vehicle while driving to the delivery destination.  As a further example, other aggrieved employees would miss their meal periods due to the heavy workload and were instructed by management to clock out and continue working.

Moreover, REXEL did not provide Ms. Vandagriff and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.  During her employment, Ms. Vandagriff worked shifts in excess of ten (10) hours or more per day, but was not provided a second 30-minute meal period.  Ms. Vandagriff and other aggrieved employees did not

sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

At all times herein mentioned, REXEL knew or should have known that, as a result of these policies, Ms. Vandagriff and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods. REXEL further knew or should have known that it did not pay Ms. Vandagriff and other aggrieved employees meal period premium wages when meal periods were late, interrupted, shortened, or missed because REXEL adjusted employee time records to reflect compliant meal periods, even if none were taken.

Moreover, REXEL engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of REXEL's practices and/or policies, Ms. Vandagriff and other aggrieved employees have not received premium pay for all missed, late, and interrupted meal periods. Alternatively, to the extent that REXEL did pay Ms. Vandagriff and other aggrieved employees premium pay for missed, late, and interrupted meal periods, REXEL did not pay Ms. Vandagriff and other aggrieved employees at the correct rate of pay for premium wages because REXEL systematically failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198. Ms. Vandagriff and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### <u>Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods</u>

California Labor Code sections 226.7, 516, 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, REXEL regularly failed to authorize and permit Ms. Vandagriff and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, REXEL's company-wide practices, including assigning heavy workloads, prevented Ms. Vandagriff and other aggrieved employees from being

relieved of all duty to take their rest periods. For example, REXEL actively discouraged other aggrieved employees from taking rest periods by telling them that their rest periods were included in their 60-minute meal periods. Additionally, REXEL failed to schedule rest periods, which, coupled with REXEL's failure to provide adequate rest period coverage, further led to Ms. Vandagriff and other aggrieved employees not being authorized and permitted to take compliant rest periods. As a result of REXEL's practices and policies, Ms. Vandagriff and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.

Furthermore, upon information and belief, during the relevant time period, REXEL maintained and implemented a company-wide on-premises rest period policy, which mandated that Ms. Vandagriff and other aggrieved employees remain on the work premises during their rest periods. Upon information and belief, REXEL's company-wide on-premises rest period policy prevented Ms. Vandagriff and other aggrieved employees from being relieved of all duties for rest periods and caused them to perform work during rest periods.

REXEL also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted. Because of this practice and/or policy, Ms. Vandagriff and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that REXEL did pay Ms. Vandagriff and other aggrieved employees one (1) additional hour of premium pay for missed rest periods, REXEL did not pay Ms. Vandagriff and other aggrieved employees at the correct rate of pay for premium wages because REXEL failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198. Ms. Vandagriff and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. REXEL has not provided Ms. Vandagriff and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, REXEL has knowingly and intentionally provided Ms. Vandagriff and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, REXEL issued uniform wage statements to Ms. Vandagriff and other aggrieved employees

that fail to correctly list: gross wages earned; total hours worked; net wages earned; the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; the name and address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate. Specifically, REXEL violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)7), 226(a)(8), and 226(a)(9).

First, because REXEL did not record the time Ms. Vandagriff and other aggrieved employees spent working off the clock, improperly rounded their total hours worked, and deducted time from their records for meal periods that were missed (and therefore time for which they should have been paid), REXEL did not list the correct amount of gross wages and net wages earned by Ms. Vandagriff and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, REXEL failed to accurately list the total number of hours worked by Ms. Vandagriff and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Second, because REXEL did not calculate Ms. Vandagriff's and other aggrieved employees' regular rate of pay correctly for purposes of paying overtime, REXEL did not list the correct amount of gross wages in compliance with section 226(a)(1). For the same reason, REXEL also failed to list the correct amount of net wages in violation of section 226(a)(5). REXEL also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9).

Third, REXEL failed to list the last four digits of Ms. Vandagriff's and other aggrieved employees' social security number or an employee identification number other than a social security number on wage statements, in violation of section 226(a)(7).

Fourth, and separate from these violations, REXEL issued uniform wage statements to Ms. Vandagriff and other aggrieved employees that failed to correctly list the address of the legal entity of the actual employer in violation of 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, to obtain unemployment benefits, etc. During the relevant time period, REXEL systematically, and on a company-wide basis, issued wage statements to Ms. Vandagriff and other aggrieved employees that fail to list the employing entity's name and address. *See example paystub below.*



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ." Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), REXEL willfully failed to maintain accurate payroll records for Ms. Vandagriff and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and improperly rounding Ms. Vandagriff's and other aggrieved employees' hourly clock-in and clock-out duration times.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.

During the relevant time period, REXEL failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Ms. Vandagriff and other aggrieved employees, in violation of section 1198. Also, as stated, REXEL engaged in a company-wide practice and/or policy of falsifying Ms. Vandagriff's and other aggrieved employees' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Ms. Vandagriff and other aggrieved employees. Furthermore, in light of REXEL's failure to provide Ms. Vandagriff and other aggrieved employees with second 30-minute meal periods to which they were entitled, REXEL kept no records of meal start and end times for second meal periods.

Because REXEL failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Ms. Vandagriff and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full. Instead, Ms. Vandagriff and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment</u>**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, REXEL failed to pay Ms. Vandagriff and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination</u>**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due

and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

REXEL willfully failed to pay Ms. Vandagriff and other aggrieved employees who are no longer employed by REXEL all their earned wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving REXEL's employ in violation of California Labor Code sections 201, 202, and 203.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing**

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that Ms. Vandagriff and other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts. As stated, Ms. Vandagriff and other aggrieved employees followed REXEL's instructions and completed the required health screenings before REXEL permitted them to clock in for their shifts. Even though REXEL required these health screenings, REXEL did not compensate Ms. Vandagriff and other aggrieved employees for the time they spent undergoing the mandatory health screenings and temperature checks.

Moreover, at all times relevant herein, REXEL implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory drug testing, COVID-19, and/or physical examinations, but required them to do so at their own expense. As stated, REXEL had a company-wide policy requiring that all employees travel to a specified medical facility on their own time and using their own personal vehicles to undergo drug testing, COVID-19 testing, and/or physical examinations. At all times, REXEL was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider/facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. For example, REXEL gave other aggrieved employees strict instructions to obtain drug testing, COVID-19 testing, and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL and paid $250.00 out-of-pocket for some COVID-19 tests.

However, REXEL did not compensate Ms. Vandagriff and other aggrieved employees for the time they spent traveling to and from their drug testing, COVID-19 testing, and/or physical examinations, or for the time they spent undergoing the health screenings, drug testing, COVID-19 testing, and/or physical examinations. Moreover, REXEL failed to reimburse other aggrieved employees for the out-of-pocket costs for taking some COVID-19 tests. REXEL's policy and/or not paying for all costs Ms. Vandagriff and other aggrieved employees incurred undertaking mandatory health screenings, drug testing, COVID-19 testing, and/or physical examinations is in violation of California Labor Code section 222.5.

12

Ms. Vandagriff and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 14(B) – Failure to Provide Suitable Seating**

California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order. California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful." California Code of Regulations, Title 8, section 11070(14)(B) provides that "[w]hen employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

The IWC states that section 14(B) applies during "lulls in operation" when an employee, while still on the job, is not then actively engaged in any duties. *Kilby v. CVS Pharmacy, Inc.*, 368 P.3d 554, 565 (Cal. 2016), citing IWC, 1976 Wage Orders, Summary of Basic Provisions, Seats. When taken together, an employee is entitled to a seat under section 14(A) if his or her actual tasks at a discrete location make seated work feasible, while working there. *Id.* However, if other job duties take the employee to a different location where he or she must perform tasks requiring standing, the employee would be entitled to a seat under section 14(B) during "lulls in operation." *Id.*

REXEL's California warehouse locations are generally similar in their layout and design and there was, and continues to be, space near their work areas (with reasonable or no modification to these work areas) to allow for the presence and use of a seat or stool by other aggrieved employees during lulls in operation. REXEL could provide other aggrieved employees with a seat or stool in its work areas, but instead denies employees seating and forces other aggrieved employees to stand throughout the day.

REXEL did not provide other aggrieved employees with seats or stools in reasonable proximity to their work areas to allow them to use seats when it would not interfere with the performance of their duties for times when they were not engaged in active duties that require standing. In other words, to the extent other aggrieved employees engaged in duties in which the nature of the work required standing, REXEL denied them the use of seats nearby during lulls in their work duties. Moreover, REXEL did not inform other aggrieved employees of their rights to a seat or stool under California law.

As a result of REXEL's company-wide policy and/or practice of prohibiting employees from sitting at any time, even when they were not engaged in active duties requiring standing, and company-wide failure to provide seats in reasonable proximity to their work areas, other aggrieved employees were forced to stand during shifts and denied seats. REXEL's failure to provide suitable seating to other aggrieved employees violates California Labor Code section 1198 and IWC Wage Order 7-2001, Section 14(B).

Other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, and seek injunctive relief to bring REXEL into compliance with California's seating requirements, pursuant to Labor Code sections 1194.5 and/or 2699(a), (f)-(g).

13

**Violation of California Labor Code § 2802 – Unreimbursed Business Expenses**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc*., 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, REXEL had a company-wide policy of requiring Ms. Vandagriff and other aggrieved employees to utilize their own personal cellular phones and cellular data to carry out their job duties, but REXEL failed to reimburse them for the costs of their work-related cellular phone expenses.  For example, Ms. Vandagriff and other aggrieved employees were required to use their personal cellular phones to complete their work-related tasks, such as discussing ongoing assignments with REXEL's managers.  As a further example, other aggrieved employees were also required to use their cellular data/GPS to assist them with their driving routes.  Although REXEL required Ms. Vandagriff and other aggrieved employees to utilize their personal cellular phones to carry out their work-related responsibilities, REXEL failed to fully reimburse them for this cost.

Second, REXEL had a company-wide policy of requiring other aggrieved employees to travel in their own personal vehicles to obtain mandatory drug testing, COVID-19 testing, and/or physical examinations, but did not reimburse them for their travel expenses, including mileage.  REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations.  At all times, REXEL was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  For example, REXEL gave other aggrieved employees strict instructions to obtain drug testing, COVID-19 testing, and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL and paid $250.00 out-of-pocket for some COVID-19 tests.

Third, REXEL had a company-wide policy of requiring other aggrieved employees to utilize their own personal vehicles for work purposes, such as making deliveries to customers and transporting materials between store locations, but failed to reimburse them for all costs of travel, including mileage.  Although REXEL required other aggrieved employees to utilize their own vehicles to complete these tasks as part of their work duties, REXEL did not reimburse them fully for all of their travel expenses.

Fourth, REXEL, on a company-wide basis, mandated that other aggrieved employees purchase special safety shoes such as steel-toed boots, which they were required to wear while at work.  Other aggrieved employees purchased steel-toed boots to wear inside REXEL's facilities, but were not reimbursed fully for these costs.

REXEL could have provided Ms. Vandagriff and other aggrieved employees with the actual tools for use on the job, such as company phones, company vehicles, and steel-toed boots. Or REXEL could have reimbursed employees for the costs of their cellular phones, mileage, travel, medical testing, and boot expenses. Instead, REXEL passed these operating costs off onto Ms. Vandagriff and other aggrieved employees. At all relevant times, Ms. Vandagriff did not earn at least two (2) times the minimum wage

Thus, REXEL had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802. Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**Violation of California Labor Code §§ 6401 and 6403 – Failure to Provide Safety Devices and Safeguards**

California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy. California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

REXEL, on a company-wide basis, failed to provide other aggrieved employees with personal protective equipment, such as steel-toed boots, to keep them safe in the workplace. Despite the fact that REXEL required employees to wear certain personal protective equipment, including steel-toed boots, REXEL failed to provide such reasonably necessary equipment to other aggrieved employees to keep them safe.

REXEL's failure to provide other aggrieved employees with safety devices and safeguards for the workplace violates Labor Code sections 6401 and 6403. Other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." REXEL, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Vandagriff's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Vandagriff seeks the remedies set forth in Labor Code section 558 for herself, the

State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Ms. Vandagriff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for herself, all other aggrieved employees, and the State of California against REXEL for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

Therefore, on behalf of all aggrieved employees, Ms. Vandagriff seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter. If you have any questions, please contact me at the phone number or address below:

> Anthony Castillo
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Anthony Castillo

Copy: REXEL USA, INC. (via U.S. Certified Mail)

16



UNITED STATES POSTAGE
$007.930
PITNEY BOWES
02 1P
0000666553
0000666553
MAILED FROM ZIP CODE 90067

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

9590 9402 5816 0034 8461 99

2. Article Number (Transfer from service label)

7020 1290 0000 3958 7122

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053       Domestic Return Receipt

---

CERTIFIED MAIL

7020 1290 0000 3958 7122

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)        $ 2.80
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$ 1.63

Total Postage and Fees
$ 7.93

Postmark
Here

Vandagriff v.
Rexel USA, Inc.

Sent To

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

---

7020 1290 0000 3958 7122

AW, APC
Park East, Ste 1000
CA 90067

one



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ANTHONY CASTILLO
310.712.8169 Direct
Anthony.Castillo@capstonelawyers.com

January 15, 2021

VIA ONLINE SUBMISSION

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/310)

Subject:      *Tawni Vandagriff v. Rexel USA, Inc.*
              *LWDA-CM-811760-20 – AMENDED NOTICE*

Dear PAGA Administrator:

This office represents Tawni Vandagriff in connection with her claims under the California Labor Code. Ms. Vandagriff was an employee of REXEL USA, INC. ("REXEL"). We previously provided notice of Ms. Vandagriff's claims to the California Labor and Workforce Development Agency ("LWDA") on November 5, 2020, and submitted the applicable filing fee pursuant to Labor Code section 2699.3(a)(1)(B). This amended notice supplements Ms. Vandagriff's prior LWDA notice and is intended to clarify the facts and theories supporting her claims.

The employer may be contacted directly at the address below:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

Ms. Vandagriff intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Vandagriff seeks relief on behalf of herself, the State of California, and other persons who are or were employed by REXEL as a non-exempt, hourly paid employee in California at REXEL's retail, warehouse, and/or distribution center locations and who received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

REXEL employed Ms. Vandagriff as an hourly paid, non-exempt Warehouse Associate from approximately July 2017 to July 2018 at its warehouse location in Patterson, California, and as a Driver from approximately July 2018 to August 2020 at REXEL's store location in Modesto, California. During her employment, Ms. Vandagriff typically worked eight (8) to ten (10) hours or more per day, five (5) days per week. By the end of Ms. Vandagriff's employment with REXEL, she earned approximately $17.00 per hour. As a Warehouse Associate, her primary job duties as a included, without limitation, assisting customers with product pick-ups, locating products for shipments, wrapping shipment pallets,

and arranging for pallet deliveries.  As a Driver, Ms. Vandagriff's primary job duties included, without limitation, delivering products to job sites, providing customer assistance, and documenting and logging deliveries.

REXEL committed one or more of the following Labor Code violations against Ms. Vandagriff, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

### REXEL's Company-Wide and Uniform Payroll and HR Practices

REXEL USA, INC. is a Delaware corporation and is a global electrical supply and services company, serving industrial, residential, and commercial markets.  Upon information and belief, REXEL maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Dallas, Texas, for all non-exempt, hourly paid employees working for REXEL in California, including Ms. Vandagriff and other aggrieved employees.  At all relevant times, REXEL issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Ms. Vandagriff and other aggrieved employees, regardless of its location or position.

Upon information and belief, REXEL maintains a centralized Payroll department at its corporate headquarters in Dallas, Texas, which processes payroll for all non-exempt, hourly paid employees working for REXEL in California, including Ms. Vandagriff and other aggrieved employees.  Further, REXEL issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Ms. Vandagriff and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended.  In other words, REXEL utilized the same methods and formulas when calculating wages due to Ms. Vandagriff and other aggrieved employees in California.

### Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.  The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

REXEL willfully failed to pay all overtime wages owed to Ms. Vandagriff and other aggrieved employees.  During the relevant time period, Ms. Vandagriff and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of

---

[1] These facts, theories, and claims are based on Ms. Vandagriff's experience and counsel's review of those records currently available relating to Ms. Vandagriff's employment.  Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations).  Thus, Ms. Vandagriff reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant period, REXEL had a company-wide policy and/or practice of improperly rounding employees' clock-in and clock-out duration times in their timekeeping system to the nearest quarter (0.25) of an hour.  REXEL's rounding policy resulted in the failure to compensate Ms. Vandagriff and other aggrieved employees fully for all hours worked, causing Ms. Vandagriff and other aggrieved employees to not be paid overtime wages for all of the overtime hours they actually worked.  REXEL's policy of rounding was unfair and has, over time, resulted in the underpayment of wages to Ms. Vandagriff and other aggrieved employees.  To the extent REXEL's rounding policy has taken away time worked that was eligible for overtime, Ms. Vandagriff and other aggrieved employees were denied overtime pay for all hours worked.

Second, REXEL had a company-wide practice and/or policy of requiring Ms. Vandagriff and other aggrieved employees to perform work-related tasks while off-the-clock, but prevented them from accounting for and recording this time in the timekeeping system.  For example, twice per month, Ms. Vandagriff and other aggrieved employees were required to respond, on their personal cellular phones, to communications from REXEL's management regarding work-related matters and assignments on their personal cellular phones after their scheduled shifts.  These off-the-clock conversations could last up to five (5) minutes per instance.  Other aggrieved employees were also asked to pick up materials from other store locations on their way into work, or report to work prior to the start of their scheduled shifts to open the stores for customers, but were prevented from clocking in until their scheduled shift start-times.  Additionally, other aggrieved employees were asked to make deliveries to customers or drop off materials to other store locations on their way home, after they had clocked out for their scheduled shifts.  Thus, REXEL failed to track all hours Ms. Vandagriff and other aggrieved employees spent working before clocking in and/or after clocking out, and Ms. Vandagriff and other aggrieved employees received no compensation for this time.

Third, during the relevant period, REXEL had, and continues to have, a company-wide policy and/or practice of understaffing its worksites while assigning heavy workloads, resulting in a failure to provide Ms. Vandagriff and other aggrieved employees with adequate meal period coverage.  As a result of this lack of meal period coverage, Ms. Vandagriff and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period.  For example, Ms. Vandagriff was required to perform her duties, such as picking orders, wrapping pallets, assisting customers, or making deliveries, while clocked out for her unpaid meal periods.  Thus, Ms. Vandagriff and other aggrieved employees missed meal periods to complete their assigned workloads.  REXEL did not pay Ms. Vandagriff and other aggrieved employees for the time they continued to perform tasks during meal periods.

Additionally, REXEL, on a company-wide basis, had a practice of failing to schedule meal periods, which, in conjunction with assigning heavy workloads, further caused Ms. Vandagriff and other aggrieved employees to not be relieved of their duties for compliant meal periods.  Thus, Ms. Vandagriff and other aggrieved employees missed meal periods to complete their assigned workloads.  REXEL did not pay Ms. Vandagriff and other aggrieved employees for the time they continued to perform tasks during meal periods.  Further, on information and belief, because REXEL frowned upon employees accruing meal period penalties, when Ms. Vandagriff and other aggrieved employees failed to clock themselves out at designated meal period start times, they were subject to REXEL altering their time records and deducting time for meal periods that were not taken.  Alternatively, REXEL's supervisors adjusted employee time records to show compliant meal periods, even if none were taken.  Consequently, Ms. Vandagriff and other aggrieved employees performed work during meal periods for which they were not paid.

REXEL knew or should have known that as a result of these company-wide practices and/or policies, Ms. Vandagriff and other aggrieved employees were performing assigned duties during their meal periods and performing work off-the-clock before or after their shifts, and were suffered or permitted to perform work for which they were not paid. Because Ms. Vandagriff and other aggrieved employees worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Ms. Vandagriff and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

Furthermore, on information and belief, REXEL did not pay Ms. Vandagriff and other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, REXEL paid Ms. Vandagriff and other aggrieved employees incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration. However, in violation of the California Labor Code, REXEL failed to incorporate all compensation, including incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when Ms. Vandagriff and other aggrieved employees worked overtime and received these other forms of pay, REXEL failed to pay all overtime wages by paying a lower overtime rate than required.

For example, REXEL paid Ms. Vandagriff and other aggrieved employees fringe benefits pay. REXEL also paid other aggrieved employees nondiscretionary bonuses and/or commission payments related to sales made from the accounts they managed or sales for their retail locations. On information and belief, fringe benefit payments were listed on Ms. Vandagriff's and other aggrieved employees' wage statements as "Frn Fringe," and some of these nondiscretionary bonuses and/or commission payments were listed on other aggrieved employees' wage statements as "Commissions ISM" or "Cm1 O/S Com." During pay periods that Ms. Vandagriff and other aggrieved employees were paid overtime wages, REXEL did not always incorporate the nondiscretionary bonuses, commission pay, incentive pay, and/or fringe benefit pay into Ms. Vandagriff's and other aggrieved employees' regular rate of pay and, as a result, paid them at incorrect and lower rates of pay for overtime hours worked. Specifically, REXEL paid Ms. Vandagriff and other aggrieved employees 1.5 times their hourly rate of pay instead of 1.5 times their regular rate of pay. REXEL's failure to properly calculate the overtime rates of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Ms. Vandagriff and other aggrieved employees on a company-wide basis.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined in Wage Order No. 7 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11070(2)(G) (defining "Hours Worked").

During the relevant time period, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that Ms. Vandagriff and other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts. Ms. Vandagriff and other aggrieved

employees followed REXEL's instructions and completed the required health screenings before being permitted to clock in for their shifts. Even though REXEL required these health screenings, REXEL did not provide Ms. Vandagriff and other aggrieved employees a mechanism to record this time worked so they could be compensated for the time spent undergoing mandatory health screenings and temperature checks.

Also, as stated above, REXEL had a company-wide policy and/or practice of rounding Ms. Vandagriff's and other aggrieved employees' hourly clock-in and clock-out duration times in its timekeeping system to the nearest quarter hour, resulting in the failure to compensate them for all hours worked. Furthermore, as set forth above, Ms. Vandagriff and other aggrieved employees were required to perform duties off-the-clock before and after their scheduled shifts, such as making deliveries and/or picking up supplies from other locations, time for which they were not paid. As also stated above, due to REXEL's policy and/or practice of understaffing its locations while assigning heavy workloads, Ms. Vandagriff and other aggrieved employees were forced to forgo meal periods and instead continue to perform their duties during unpaid meal periods.

Furthermore, REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations. At all times, REXEL was in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. REXEL gave other aggrieved employees strict instructions to obtain drug testing, COVID-19 testing, and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL. Other aggrieved employees were required to travel in their own personal vehicles and spend time undergoing REXEL's mandatory drug tests, COVID-19 testing, and/or physical examinations. However, REXEL did not compensate other aggrieved employees for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing, COVID-19 testing, and/or physical examinations.

Thus, REXEL did not pay at least minimum wages for off-the-clock hours that qualified for overtime premium payment. Also, to the extent that these off-the-clock hours did not qualify for overtime premium payment, REXEL did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, and 1197.1. Accordingly, REXEL regularly failed to pay at least minimum wages to Ms. Vandagriff and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1 and 1198.

Ms. Vandagriff and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

## Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods

California Labor Code sections 226.7, 512(a), 516, 1198 and the applicable IWC Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must

5

start after no more than five hours. *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

As stated, REXEL, on a company-wide basis, has systematically discouraged and impeded Ms. Vandagriff and other aggrieved employees from taking meal periods by failing to schedule meal periods, while assigning heavy workloads, even though it is aware and knows that employees are entitled to such meal periods. As a result of this uniform failure to schedule meal periods, Ms. Vandagriff and other aggrieved employees have not been provided timely, uninterrupted 30-minute meal periods during their shifts in which they were entitled to receive a meal period. As a result of REXEL's practices and/or policies, Ms. Vandagriff and other aggrieved employees had to work through part or all of their meal periods and wait extended periods of time before taking meal periods.

Furthermore, on information and belief, because REXEL frowned upon employees accruing meal period penalties, REXEL's management would adjust Ms. Vandagriff's and other aggrieved employees' time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by REXEL. However, Ms. Vandagriff and other aggrieved employees worked through meal periods because there were not enough employees on duty to handle the heavy workload and tend to REXEL's customers.

As a result of REXEL's company-wide practices and/or policies, Ms. Vandagriff and other aggrieved employees would be forced to work in excess of five (5) hours before taking a meal period and, at times, had to forgo their meal periods altogether. For example, Ms. Vandagriff was asked by management to make a delivery during her meal period and was advised to eat her meal in the company vehicle while driving to the delivery destination. As a further example, other aggrieved employees frequently received their meal periods after they worked five (5) hours and/or would miss their meal periods due to the heavy workload and were instructed by management to clock out and continue working.

Moreover, REXEL did not provide Ms. Vandagriff and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. During her employment, Ms. Vandagriff worked shifts in excess of ten (10) hours or more per day, but was not provided a second 30-minute meal period. Ms. Vandagriff and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

At all times herein mentioned, REXEL knew or should have known that, as a result of these policies, Ms. Vandagriff and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods. REXEL further knew or should have known that it did not pay Ms. Vandagriff and other aggrieved employees meal period premium wages when meal periods were late, interrupted, shortened, or missed because REXEL adjusted employee time records to reflect compliant meal periods, even if none were taken.

Moreover, REXEL engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of REXEL's practices and/or policies, Ms. Vandagriff and other aggrieved employees have not received premium pay for all missed, late, and interrupted meal periods. Alternatively, to the extent that REXEL did pay Ms. Vandagriff and other aggrieved employees premium pay for missed, late, and interrupted meal periods, REXEL did not

pay Ms. Vandagriff and other aggrieved employees at the correct rate of pay for premium wages because REXEL systematically failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198.  Ms. Vandagriff and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods**

California Labor Code sections 226.7, 516, 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest."  *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, REXEL regularly failed to authorize and permit Ms. Vandagriff and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, REXEL's company-wide practices, including assigning heavy workloads, prevented Ms. Vandagriff and other aggrieved employees from being relieved of all duty to take their rest periods.  For example, REXEL actively discouraged other aggrieved employees from taking rest periods by telling them that their rest periods were included in their 60-minute meal periods.  Additionally, REXEL failed to schedule rest periods, which, coupled with REXEL's failure to provide adequate rest period coverage, further led to Ms. Vandagriff and other aggrieved employees not being authorized and permitted to take compliant rest periods.  As a result of REXEL's practices and policies, Ms. Vandagriff and other aggrieved employees worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.  For example, Ms. Vangagriff never received a rest period throughout her employment due to the lack of coverage and REXEL's failure to schedule rest periods.

Furthermore, upon information and belief, during the relevant time period, REXEL maintained and implemented a company-wide on-premises rest period policy, which mandated that Ms. Vandagriff and other aggrieved employees remain on the work premises during their rest periods.  Upon information and belief, REXEL's company-wide on-premises rest period policy prevented Ms. Vandagriff and other aggrieved employees from being relieved of all duties for rest periods and caused them to perform work during rest periods.

REXEL also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted.  Because of this practice and/or policy, Ms. Vandagriff and other aggrieved employees have not received premium pay for all missed rest periods.  Alternatively, to the extent that REXEL did pay Ms. Vandagriff and other aggrieved employees one (1) additional hour of premium pay for missed rest periods, REXEL did not pay Ms. Vandagriff and other aggrieved employees at the correct rate of pay for premium wages because REXEL failed to include all forms of compensation, such as incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, REXEL failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198.  Ms. Vandagriff and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records.  REXEL has not provided Ms. Vandagriff and other aggrieved employees with properly itemized wage statements.  Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000.  Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, REXEL has knowingly and intentionally provided Ms. Vandagriff and other aggrieved employees with uniform, incomplete, and inaccurate wage statements.  For example, REXEL issued uniform wage statements to Ms. Vandagriff and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; the name and address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate.  Specifically, REXEL violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(7), 226(a)(8), and 226(a)(9).

First, because REXEL did not record the time Ms. Vandagriff and other aggrieved employees spent working off the clock, improperly rounded their total hours worked, and deducted time from their records for meal periods that were missed (and therefore time for which they should have been paid), REXEL did not list the correct amount of gross wages and net wages earned by Ms. Vandagriff and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively.  For the same reason, REXEL failed to accurately list the total number of hours worked by Ms. Vandagriff and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Second, because REXEL did not calculate Ms. Vandagriff's and other aggrieved employees' regular rate of pay correctly for purposes of paying overtime and paid sick leave, REXEL did not list the correct amount of gross wages in compliance with section 226(a)(1).  For the same reason, REXEL also failed to

list the correct amount of net wages in violation of section 226(a)(5). REXEL also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9).

Third, REXEL failed to list the last four digits of Ms. Vandagriff's and other aggrieved employees' social security number or an employee identification number other than a social security number on wage statements, in violation of section 226(a)(7). For example, REXEL systematically, and on a company-wide basis, failed to list a social security number or employee identification number on Ms. Vandagriff's and other aggrieved employees' final wage statements, including Ms. Vandagriff's wage statement dated October 14, 2020. *See example paystub below.*

Fourth, and separate from these violations, REXEL issued uniform wage statements to Ms. Vandagriff and other aggrieved employees that failed to correctly list the name and address of the legal entity of the actual employer in violation of 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, to obtain unemployment benefits, etc. During the relevant time period, REXEL systematically, and on a company-wide basis, issued wage statements to Ms. Vandagriff and other aggrieved employees that fail to list the employing entity's name and address. For example, REXEL uniformly failed to list the employing entity's name and address on Ms. Vandagriff's and other aggrieved employees' final wage statements, including Ms. Vandagriff's wage statement dated October 14, 2020. *See example paystub below.*



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid;

and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ." Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section 1174(d), REXEL willfully failed to maintain accurate payroll records for Ms. Vandagriff and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and improperly rounding Ms. Vandagriff's and other aggrieved employees' hourly clock-in and clock-out duration times.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, REXEL failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Ms. Vandagriff and other aggrieved employees, in violation of section 1198. Also, as stated, REXEL engaged in a company-wide practice and/or policy of falsifying Ms. Vandagriff's and other aggrieved employees' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Ms. Vandagriff and other aggrieved employees. Furthermore, in light of REXEL's failure to provide Ms. Vandagriff and other aggrieved employees with second 30-minute meal periods to which they were entitled, REXEL kept no records of meal start and end times for second meal periods.

Because REXEL failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Ms. Vandagriff and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full. Instead, Ms. Vandagriff and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor

Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, REXEL failed to pay Ms. Vandagriff and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination</u>**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

REXEL willfully failed to pay Ms. Vandagriff and other aggrieved employees who are no longer employed by REXEL all their earned wages, including, but not limited to, overtime wages, minimum wages, sick leave pay, and/or meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving REXEL's employ in violation of California Labor Code sections 201, 202, and 203.

Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing</u>**

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, REXEL has implemented, on a company-wide basis, an employer-imposed requirement that Ms. Vandagriff and other aggrieved employees undergo mandatory health screenings and temperature checks before their scheduled shifts. As stated, Ms. Vandagriff and other aggrieved employees followed REXEL's instructions and completed the required health screenings before REXEL permitted them to clock in for their shifts. Even though REXEL required these health screenings, REXEL did not compensate Ms. Vandagriff and other aggrieved employees for the time they spent undergoing the mandatory health screenings and temperature checks.

Moreover, at all times relevant herein, REXEL implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory drug testing, COVID-19, and/or physical examinations, but required them to do so at their own expense. As stated, REXEL had a company-wide policy requiring that all employees travel to a specified medical facility on their own time and using their own personal vehicles to undergo drug testing, COVID-19 testing, and/or physical examinations. At all times, REXEL was in control of scheduling the date and time for the testing and/or

physical examinations, selecting the provider/facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. For example, REXEL gave other aggrieved employees strict instructions to obtain drug testing, COVID-19 testing, and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL and paid $250.00 out-of-pocket for some COVID-19 tests.

However, REXEL did not compensate Ms. Vandagriff and other aggrieved employees for the time they spent traveling to and from their drug testing, COVID-19 testing, and/or physical examinations, or for the time they spent undergoing the health screenings, drug testing, COVID-19 testing, and/or physical examinations. Moreover, REXEL failed to reimburse other aggrieved employees for the out-of-pocket costs for taking some COVID-19 tests. REXEL's policy and/or not paying for all costs Ms. Vandagriff and other aggrieved employees incurred undertaking mandatory health screenings, drug testing, COVID-19 testing, and/or physical examinations is in violation of California Labor Code section 222.5.

Ms. Vandagriff and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**<u>Violation of California Labor Code § 246 – Unpaid Sick Leave</u>**

At all relevant times herein, California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249 provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Further, Labor Code section 246(l) provides that an employer shall calculate paid sick leave by using one of two calculations: 1) "[p]aid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek[;]" or 2) "[p]aid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment."

During the relevant time period, REXEL did not pay other aggrieved employees the correct sick leave rates of pay. As stated, in addition to an hourly wage, REXEL paid Ms. Vandagriff and other aggrieved employees incentive pay, commission pay, nondiscretionary bonuses, fringe benefit pay, and/or other forms of remuneration. However, in violation of the California Labor Code, REXEL failed to incorporate all remunerations, including incentive pay, commission pay, nondiscretionary bonuses, and/or fringe benefit pay, into the calculation of the regular rate of pay for purposes of calculating the sick leave rate of pay. Therefore, during times when other aggrieved employees took sick leave and received these other forms of pay, REXEL failed to pay all sick leave benefits by paying a lower sick leave rate than required. Specifically, REXEL paid other aggrieved employees sick leave based on their hourly rate of pay instead of their regular rate of pay.

REXEL's failure to properly calculate the sick leave rates of pay based on all remuneration paid has resulted in an underpayment of sick leave benefits to other aggrieved employees on a company-wide basis in violation of Labor Code 246(l). Other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 248.5 and/or 2699(a), (f)-(g).

12

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 14(B) – Failure to Provide Suitable Seating**

California Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.  California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."  California Code of Regulations, Title 8, section 11070(14)(B) provides that "[w]hen employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."

The IWC states that section 14(B) applies during "lulls in operation" when an employee, while still on the job, is not then actively engaged in any duties.  *Kilby v. CVS Pharmacy, Inc.*, 368 P.3d 554, 565 (Cal. 2016), citing IWC, 1976 Wage Orders, Summary of Basic Provisions, Seats.  When taken together, an employee is entitled to a seat under section 14(A) if his or her actual tasks at a discrete location make seated work feasible, while working there.  *Id.*  However, if other job duties take the employee to a different location where he or she must perform tasks requiring standing, the employee would be entitled to a seat under section 14(B) during "lulls in operation."  *Id.*

REXEL's California warehouse locations are generally similar in their layout and design and there was, and continues to be, space near their work areas (with reasonable or no modification to these work areas) to allow for the presence and use of a seat or stool by other aggrieved employees during lulls in operation.  REXEL could provide other aggrieved employees with a seat or stool in its work areas, but instead denies employees seating and forces other aggrieved employees to stand throughout the day.

REXEL did not provide other aggrieved employees with seats or stools in reasonable proximity to their work areas to allow them to use seats when it would not interfere with the performance of their duties for times when they were not engaged in active duties that require standing.  In other words, to the extent other aggrieved employees engaged in duties in which the nature of the work required standing, REXEL denied them the use of seats nearby during lulls in their work duties.  Moreover, REXEL did not inform other aggrieved employees of their rights to a seat or stool under California law.

As a result of REXEL's company-wide policy and/or practice of prohibiting employees from sitting at any time, even when they were not engaged in active duties requiring standing, and company-wide failure to provide seats in reasonable proximity to their work areas, other aggrieved employees were forced to stand during shifts and denied seats.  REXEL's failure to provide suitable seating to other aggrieved employees violates California Labor Code section 1198 and IWC Wage Order 7-2001, Section 14(B).

Other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, and seek injunctive relief to bring REXEL into compliance with California's seating requirements, pursuant to Labor Code sections 1194.5 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 2802 – Unreimbursed Business Expenses**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 7-2001, provides that: "[w]hen tools or equipment are required

by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, REXEL had a company-wide policy of requiring Ms. Vandagriff and other aggrieved employees to utilize their own personal cellular phones and cellular data to carry out their job duties, but REXEL failed to reimburse them for the costs of their work-related cellular phone expenses.  For example, Ms. Vandagriff and other aggrieved employees were required to use their personal cellular phones to complete their work-related tasks, such as discussing ongoing assignments with REXEL's managers.  As a further example, other aggrieved employees were also required to use their cellular data/GPS to assist them with their driving routes.  Although REXEL required Ms. Vandagriff and other aggrieved employees to utilize their personal cellular phones to carry out their work-related responsibilities, REXEL failed to fully reimburse them for this cost.

Second, REXEL had a company-wide policy of requiring other aggrieved employees to travel in their own personal vehicles to obtain mandatory drug testing, COVID-19 testing, and/or physical examinations, but did not reimburse them for their travel expenses, including mileage.  REXEL maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing, COVID-19 testing, and/or physical examinations.  At all times, REXEL was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  For example, REXEL gave other aggrieved employees strict instructions to obtain drug testing, COVID-19 testing, and/or physical examinations, and other aggrieved employees underwent the testing for the sole benefit of REXEL and paid $250.00 out-of-pocket for some COVID-19 tests.

Third, REXEL had a company-wide policy of requiring other aggrieved employees to utilize their own personal vehicles for work purposes, such as making deliveries to customers and transporting materials between store locations, but failed to reimburse them for all costs of travel, including mileage.  Although REXEL required other aggrieved employees to utilize their own vehicles to complete these tasks as part of their work duties, REXEL did not reimburse them fully for all of their travel expenses.

Fourth, REXEL, on a company-wide basis, mandated that other aggrieved employees purchase special safety shoes such as steel-toed boots, which they were required to wear while at work.  Other aggrieved employees purchased steel-toed boots to wear inside REXEL's facilities, but were not reimbursed fully for these costs.

REXEL could have provided Ms. Vandagriff and other aggrieved employees with the actual tools for use on the job, such as company phones, company vehicles, and steel-toed boots.  Or REXEL could have reimbursed employees for the costs of their cellular phones, mileage, travel, medical testing, and boot expenses.  Instead, REXEL passed these operating costs off onto Ms. Vandagriff and other aggrieved employees.  At all relevant times, Ms. Vandagriff did not earn at least two (2) times the minimum wage

Thus, REXEL had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802.  Ms. Vandagriff and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

14

**Violation of California Labor Code §§ 6401 and 6403 – Failure to Provide Safety Devices and Safeguards**

California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy. California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

REXEL, on a company-wide basis, failed to provide other aggrieved employees with personal protective equipment, such as steel-toed boots, to keep them safe in the workplace. Despite the fact that REXEL required employees to wear certain personal protective equipment, including steel-toed boots, REXEL failed to provide such reasonably necessary equipment to other aggrieved employees to keep them safe.

REXEL's failure to provide other aggrieved employees with safety devices and safeguards for the workplace violates Labor Code sections 6401 and 6403. Other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." REXEL, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Vandagriff's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Vandagriff seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Ms. Vandagriff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for herself, all other aggrieved employees, and the State of California against REXEL for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

Therefore, on behalf of all aggrieved employees, Ms. Vandagriff seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

        Anthony Castillo
        Capstone Law APC
        1875 Century Park East, Suite 1000
        Los Angeles, CA 90067
        (310) 556-4811

Best Regards,

Anthony Castillo

Copy: REXEL USA, INC. (via U.S. Certified Mail)



UNITED STATES POSTAGE
PITNEY BOWES
$007.93
02 1P     JAN 15 20
0000869553
MAILED FROM ZIP CODE 9000

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

9590 9402 1512 5362 2721 83

2. Article Number (Transfer from service label)

7020 1290 0000 3958 7320

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

CERTIFIED MAIL®

7020 1290 0000 3958 7320

REXEL USA, INC.
14951 DALLAS PARKWAY
DALLAS TX 75254

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

Certified Mail Fee
$ 3.50

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)     $ 2.80
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery  $

Postmark
Here

*Vandagriff v.
Rexel USA, Inc.*

Postage
$ 1.63

Total Postage and Fees
$ 7.93

Sent To

Street and Apt. No., or PO Box No.
REXEL USA, INC.
14951 DALLAS PARKWAY
City, State, ZIP+4®
DALLAS TX 75254

7020 1290 0000 3958 7320

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

LAW APC
Park East, Ste 1000
CA 90067